## BUCCOLA v. NATL. FIRE INS. CO. OF HARTFORD, CONN.

___

(November 3, 1931. Opinion and Decree.)
(January 14, 1932. Rehearing Refused.)
(February 1, 1932. Writs of Certiorari and
Review Refused by Supreme Court.)

___

Michel Provosty and Oliver P. Carriere, of New Orleans, attorneys for plaintiff, appellant.

Stirling Parkerson, of New Orleans, attorney for defendant, appellee.

WESTERFIELD, J. Buccola, the plaintiff in this case, on October 17, 1928, obtained from the defendant, the National Fire Insurance Company of Hartford, Connecticut, a fire insurance policy in the sum of $1,000, covering, for a period of three years, a one-story frame building known as No. 6058 General Haig street in the city of New Orleans. On March 24, 1930, while the policy was in force, the building was damaged by fire in an amount admittedly exceeding the face of the policy. Payment of the loss being refused by the insurance company, this suit was brought for $1,000, the amount of the policy.

There was judgment below in favor of defendant dismissing the suit and plaintiff has appealed.

Plaintiff's claim is resisted upon three grounds:

First, because under the express terms of its policy the property was insured against fire only "while occupied as a dwelling," and when the loss occurred the property was not so occupied, but used for commercial purposes; that is, for the manufacture of intoxicating beverages.

Second, there was a change of occupancy with increase of hazard, contrary to the provisions of the policy, with resulting forfeiture thereof.

Third, the policy was annulled by false swearing on the part of the insured in connection with the execution of proof of loss.

The evidence is to the effect that Buccola had caused a rental sign to be placed upon the property reading as follows:

"For rent. Apply next door."

Observing this sign, a party by the name of Smith called next door and made inquiry of Miss Margaret Ritter, the occupant of the adjoining property, which was also owned by Buccola, concerning the renting of the premises. Miss Ritter directed Smith to Buccola, who lived at some distance from the Haig street property on Second street, whereupon Smith called upon Buccola and rented the property for the sum of $10 per month. About two months after taking possession the fire occurred, resulting in the total destruction of the property. Among the ruins were discovered a number of partially destroyed wooden barrels and a quantity of five-gallon cans and a large tank, also other odds and ends, which, it is claimed, were used in the manufacture of alcohol. Some of the barrels contained cracked corn and other ingredients which were said to emit an alcoholic fragrance.

The first point raised by the defendant is based upon the provision in the policy to the effect that the property is insured while occupied as a dwelling, clearly importing, it is said, that the property was not covered if not so occupied. This clause has been construed as a mere representation and not a warranty:

"But in those cases, where, from the stipulations of the contract, such statement amounts to a warranty, the warranty must be referred to the time of making the proposal, it is not a continuing warranty that it shall be continued to be used and occupied as stated during the entire risk, or that the use and occupation shall not be changed." Joyce on Insurance, vol. 4, p. 3618, section 2103, and authorities there cited.

However, in the case before us the exclusive commercial occupancy of the dwelling is by no means established by the proof in the record. Miss Ritter, who lived next door to the property, testified that she saw Smith move in, accompanied by a woman whom she assumed to be his wife; that she saw a load of furniture delivered on the premises; and that, thereafter, frequently, she saw Smith and his wife about the place, sitting upon the front porch and otherwise conducting themselves as would be expected in the case of a married couple occupying the dwelling. The very night before the fire, she says, she saw the couple about the premises. Miss Ritter's testimony is attacked as unworthy of belief because of her statement to the effect that she knew of no still being operated in the premises and had not noticed any odor of fermenting liquids. Miss Ritter, however, conducted a dairy, and it was her practice to leave her home very early in the morning to bring milk to her customers, returning in the early afternoon, and retiring shortly thereafter. If the still was in operation, it is possible that Miss Ritter would not have been made aware of its presence because of her unusual oc-

cupation, and, so far as the odors which emanated from fermenting alcoholic liquors are concerned, the prevailing winds during her waking hours may have wafted their fragrance in the opposite direction, or, perhaps, the operator of the still may have taken some precaution to prevent the escape of these odors; and then, too, it may be that Miss Ritter is not familiar with and could not recognize the odor of alcohol, even though such odors were actually within the scope of her nostrils. From the state of the record we are unable to conclude that the property was not occupied as a dwelling at the time of the fire, whatever may be said of the presence of the still, and the increased hazard which its operation would involve.

On the second point raised by defendant's counsel, two provisions of the policy are pertinent:

(a) "This entire policy * * * shall be void; * * * if the hazard be increased by any means within the control or knowledge of insured. * * *"

(b) "This entire policy * * * shall be void; * * * if any change other than by death of the insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise."

It is apparent that these two clauses in the policy are inconsistent, because, to provide that the policy shall be void if the hazard be increased by any means within the control or knowledge of the insured, is equivalent to saying that an increase in the hazard without the control or knowledge of the insured will not invalidate the policy; whereas, to stipulate that the policy shall be void if any change, except death, occur in the interest, title, or possession of the property, except change of occupancy without increase of hazard, is

equivalent to stipulating that a change in the occupancy, of whatsoever nature, which involved an increase in hazard would invalidate the policy with or without the knowledge of the insured.

Defendant's counsel contends, as we understand his argument, that the phrase "by any means within the control or knowledge of the insured" cannot be used to qualify or to detract from the emphasis of the other clause declaring that the policy "shall be void if any change other than death of an insured takes place, etc." This clause is claimed to be "an explicit statement that changes of occupants, with increase of hazard shall render the policy void, even though it shall occur as the result of some act beyond the control of the insured. It is a declaration in clear, positive and unequivocal language that if such a change in occupancy occurs, no matter how, and even if the insured is powerless to prevent it, it shall annul the policy." "The phrase ending 'within the means, control or knowledge of the insured,' " the argument continues, "is only pertinent to a situation involving changes other than those which necessarily affect the interest, title or possession of the subject of insurance." In other words, one clause attempts to specify in detail the hazardous changes affecting the property, whereas the other clause is intended to supplement it by declaring in general terms that all other changes which may affect the hazard would invalidate the policy only if "within the knowledge or control of the insured." To quote again from counsel's brief: "If, however, the insured has knowledge of some act or thing that increases the hazard, other than those specifically enumerated in the policy, and if that act or thing is also under his control, the obligation is imposed upon him to put an end to it." This construction, it is contended,

is reasonable and warranted under the circumstances, because the former rule, to the effect that insurance contracts· should be construed liberally in favor of the insured and strictly against the company, no longer has any application in this state for the reason that, in 1898, by Act No. 105, the Legislature introduced the New York standard form of fire insurance policy and prohibited all others. St. Landry Wholesale Mercantile Co. v. New Hampshire Fire Ins. Co., 114 La. 146, 38 So. 87, 3 Ann. Cas. 821.

It is conceded that the adoption of the New York form has had the effect claimed for it by defendant's counsel; that is to say, that since all other forms of fire insurance are prohibited in this state, no liberality of construction· should be indulged in behalf of an insured and no rule of strict construction operates against the insurer. The policy must, therefore, be construed according to principles of statutory construction, without any leaning toward one side or the other. Viewed in this light and considering both of the clauses under discussion together, we find ourselves in disagreement with defendant's counsel as to their effect. Indeed, we can hardly conceive of a situation which would require knowledge on the part of the insured of an increase in hazard which would be without the clause where an enumeration is attempted and within the other clause, which plaintiff regards as an omnibus provision. The construction contended for, it seems to us, does violence to the text and has the effect of deleting the requirement that an increase in hazard be within the knowledge or control of defendant, before forfeiture of the policy should result. We think counsel has been misled by authorities applicable to a situation which is not presented in the case before us. In a note found in 12 L. R. A. (N. S.) p. 485, we find the following discussion, which we believe explains the confusion ˙which has come to counsel in this regard:

"Where the provision of a fire-insurance policy, avoiding the same if certain conditions are not complied with, is couched in absolute and unqualified language, the authorities are almost unanimously in accord with the above decision in holding the violation of any such conditions by a tenant of the assured to be a violation by the assured himself. Thus, in Liverpool & L. & G. Ins. Co. v. Gunther, 116 U. S. 113, 6 S. Ct. 306, 29 L. Ed. 575, reversing 20 Blatchf. 362, 85 F. 846, in which the policy in suit stipulated for its avoidance if the assured should keep or use upon the insured premises certain articles, and this prohibition was unconditional and unlimited, it was held that a violation by anyone permitted by the assured to occupy the premises was a violation by the assured himself.

"And in Kelly v. Worcester Mut. F. Ins. Co., 97 Mass. 284, in which the policy sued on provided for its avoidance if the insured premises were occupied or used for unlawful purposes, which provision stopped there and added no qualifying words, it was held that the policy was avoided by the insured's tenant storing barrels of intoxicating liquors in the building with intent to sell the same in violation of law. The court said that this use of the building for an unlawful purpose by the tenant, even if unknown to the owner, avoided his policy by its very terms, the manifest object of which was to define certain risks which the insurers would not assume, without regard to the question whether they arose or existed by the act, or with the knowledge of the assured.

"This rule is approved, also, by the following cases: [Citing numerous authorities.]

"The present form of standard fire-insurance policy, however, usually contains a stipulation avoiding the policy for specified things 'within the control or knowledge of the assured,' or language of similar import; and it has accordingly been held in Merrill v. Insurance Co. of N. A. [C. C.] 23 F. 245, that, to defeat a recovery upon a policy providing that any change increasing the hazard, within the control of, or known to, the assured, and not reported to the company and agreed to by it,

will render the policy null and void, the insurer must affirmatively prove that changes made by a tenant, which increased the hazard, were made by the consent of the owner or his agent. [Authorities.]"

On the question of law involved in the second point, we conclude that to avoid a policy upon the ground that the hazard has been increased, the increased hazard must be shown to have taken place "within the control or knowledge of insured." Nor do we believe that the phrase "within the control," which, as counsel points out, is separated by the disjunctive "or," contemplates such control as flows from the dominion of owner alone, and cannot agree that the mere fact that an owner has a right to inspect the insured property and to threaten his tenant with dispossession as a means of controlling his occupational activities, and fails to exercise that authority, is sufficient to avoid the policy. We believe the words "control or knowledge" are equivalent to consent, or knowledge, and imply a negative participation in the increased hazard.

It is conceded that Smith, the tenant, who is alleged to have operated the still, was in the property only two months, and that during that time neither the owner nor his wife, both of whom testified that they knew nothing whatever of the existence of the still, visited these premises. There is no suggestion that Buccola participated in the alleged nefarious occupation of Smith, and the low rent ($10 a month) is eloquent testimony to the effect that Buccola did not know that Smith rented the property for any purpose except residential. There is, therefore, no evidence whatever connecting Buccola with the alleged still. Applying the law, as we understand it, and the facts, as we find them, we conclude that the second point is not well taken. Fayle v. Camden Fire

Ins. Co., 85 Mont. 248, 278 P. 509; Phila. Fire & Marine Ins. Co. v. English, 232 Ky. 785, 24 S. W. (2d) 616; Joyce on Insurance, par. 2222; Cooley Law of Insurance, p. 1639.

The final contention of defendant is based upon the following provision in the policy:

"This entire policy shall be void * * * in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

It is said that this provision was violated because in the proof of loss submitted by plaintiff to the defendant on the 7th of April, 1930, two weeks after the fire, it was stated that the property, at the time of the fire, was occupied by Charles Smith, and, in a second proof of loss submitted in compliance with the request of defendant it is stated that "this building was used for purposes contemplated by the policy and for no other purpose." The contention is that, in the first place, the building at the time of the fire was not occupied by Charles Smith, as a residence, and that, in any event, as plaintiff should have known, having visited the ruins before making the second proof of loss, the building was used for other purposes than those contemplated by the policy. Consequently, having made affidavit to the contrary, Buccola has voided his policy and deprived himself of all benefit thereof. Claflin v. Commonwealth Ins. Co., 110 U. S. 81, 3 S. Ct. 507, 28 L. Ed. 76; Richard D'Aigle Co. v. Western Ins. Co., 136 La. 777, 67 So. 827. Answering the argument of defendant's counsel on this point, plaintiff points out that the proof of loss was pro forma and, in the words of the policy, that it could not deceive defendant, since it is admitted that the company was in full

358

·possession of all of the facts before requiring the second proof of loss that Buccola had no intention to deceive anyone and that, consequently, the clause invoked cannot operate a forfeiture. Our attention is called to the following text found in the Second Edition of Joyce on Insurance, volume 5, at page 5548, section 3339:

"The provision in a policy that any fraud or attempted fraud or false swearing on the part of the insured in making the preliminary proofs shall forfeit all claim against the company is a valid stipulation. An intent, however, must exist, and the general rule seems to be that the statement must be a willfully false one concerning some material matter, and made with the intent to deceive the insurer, in order to work a forfeiture."

And the following in Cooley's Briefs on Insurance (2 Ed.) vol. 7, p. 5846:

"As a rule, no attempt has been made to draw any distinction as to the meaning of the various phrases used, such as 'fraud or false swearing,' 'fraud and false swearing,' and 'fraud by false swearing.' Whatever the particular phrase, the holding has almost without exception been, as already pointed out, that the element of fraud must be present."

And, also, to the following language in Strauss v. Insurance Co., 157 La. 662, 102 So. 861:

"For false swearing in proofs of loss to prevent recovery on fire policy assured must have made false statements knowingly and willfully, with intent to deceive insurer concerning matter material to insurance."

The authorities quoted by plaintiff seem to be in point and applicable to the facts of this case. Those relied upon by defendant all refer to a situation which is not analogous to that obtaining in the case at bar. We might add, however, that it would be expecting a great deal of the plaintiff to require him by affidavit to certify that at the time of the fire the house was being used for the manufacture of alcoholic liquors, since his entire case is predicated upon his lack of knowledge of the presence of a still in the house. Of course, he could qualify an assertion that a still was in the house by saying that he had only discovered it after the fire, but here, again, he would be destroying another position he has taken in this suit to the effect that, as a matter of fact, there was no still on the premises. In any event, all that he could truthfully say, which is all that any of the witnesses have said, is that a number of barrels and cans, a funnel, and other odds and ends were discovered in the debris. He certainly could not have been asked to swear that these materials formed part of, or were the accessories to, the operation of an alcohol still.

Sixty days having elapsed since the submission of proof of loss, without payment, and the provisions of Act No. 168 of 1908 being invoked, a penalty of 12 per cent must be imposed and a reasonable attorney's fee fixed and charged as a penalty; the act relied on gives us no alternative. We fix the attorney's fee at $200.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of plaintiff, Carmelo Buccola, and against the defendant, the National Fire Insurance Company of Hartford, Conn., in the full sum of $1,000, together with 12 per cent penalty, the whole subject to interest at the rate of 5 per cent per annum from judicial demand until paid.

It is further ordered that there be judgment in favor of the plaintiff and against the defendant in an additional sum of $200, as attorney's fees, and all costs.