GREENLEAF v. WESTCHESTER FIRE INS.
CO. OF NEW YORK.

No. 1186.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1933.

St. Clair Adams and St. Clair Adams, Jr., all of New Orleans, for appellant.

W. C. Braden, of Lake Charles, for appellee.

MOUTON, Judge.

A fire insurance policy was issued by defendant company in November, 1931, for $2,000 on the residence of plaintiff herein, which was destroyed by fire October 3, 1932, during the life of the policy.

Through its adjuster, defendant company agreed to pay $1,900 for the loss suffered by plaintiff, which was deposited in the registry of the court by defendant.

The only issue presented is as to whether plaintiff is entitled to recover the 12 per cent. damages and reasonable attorney's fees from defendant company under Act No. 168 of 1908, for its alleged failure to pay the amount due under the policy within sixty days from the proof of loss.

It is contended by plaintiff that the proof of loss was made on October 17, 1932, while the defendant company claims that it was made October 24, 1932.

The district judge says, on this question, that from all the evidence it appears probable that it was made on October 24, 1932; and accepted that date in fixing the sixty-day limit within which, under the statute, defendant company was required to pay for the destruction of the property insured.

The preponderance of the evidence clearly shows that the proof of loss was made on October 24, 1932, and not on the 17th of that month, as contended for by plaintiff. Hence the sixty-day period, within which the defendant company was required to make the payment, expired on the 24th of December, 1932.

It is shown that in November, 1932, plaintiff called on Mr. Hollins, local agent of defendant at Lake Charles, to inquire about when payment of his fire loss could be expected. On November 26, 1932, Mr. Hollins wrote to the Cross R. Scruggs Company at Dallas, Tex., general agent of defendant company, for information on the subject. In answer to that letter, that company, the Scruggs Company, wrote the Hollins Insurance Company that defendant company had elected to take the sixty days' delay, in accordance with the policy contract, in which to pay the claim, and that on December 20th draft would be sent to the Hollins Company for delivery to the assured. It is shown that a draft for $1,900, as promised by the Cross R. Scruggs Company, was issued, payable to plaintiff, and was mailed to the Miller Insurance Agency at Lake Charles, which had represented the defendant company prior to the appointment of the Hollins Insurance Company, which was the agent of defendant when the draft was mailed to the Miller Insurance Company.

It is explained by Mr. Robert B. Price, clerk for the Cross R. Scruggs Company, at Dallas, Tex., which issued the draft, that, owing to the sickness of the regular clerk, that company had to employ extra help through whom the draft was inadvertently mailed to the Miller Insurance Agency at Lake Charles which had been superseded by the Hollins Insurance Company in that city, and which was then the agent of defendant company. Mr. Price explains that the name of the agent had been taken from the copy on forms attached to the report that this pol-

icy had been issued November 8, 1931, these forms being signed by the Miller Insurance Company.

Mr. Miller, former agent of the defendant company, when the draft was mailed to him at Lake Charles, was then living in Beaumont Tex., where he had moved.

On December 30, 1932, Mr. Price received a letter from Mr. Braden, attorney for plaintiff, stating that the draft had not been received. Mr. Miller, as soon as possible, was communicated with at Beaumont, who wired on December 31, 1932, that he had just received the Greenleaf draft.

It is shown that a duplicate draft of defendant company dated December 30, 1932, to the order of plaintiff for $1,900, was presented January 3, 1933, to Mr. Braden, attorney for plaintiff, by Mr. Thornton of the New Orleans Adjustment Company, in payment of the insurance policy, but that, after consultation with his client, was the same afternoon or next morning refused by Mr. Braden.

Suit was thereafter filed on January 5, 1932, for $1,900, for 12 per cent. as penalty or damages on the amount sued for and for $285 to cover reasonable attorney's fees, with legal interest thereon from judicial demand.

The defendant filed its answer alleging that it acted throughout in good faith, and that the delay in delivering the draft was the result of an inadvertent error on the part of one of its loss clerks, and, contemporaneously with the filing of the answer, deposited the sum of $1,900 in the registry of the court.

On the 23d of February, 1933, on the application of plaintiff, but without prejudice to his rights, the court instructed the clerk of court to deliver to plaintiff the sum of $1,900 which had been deposited with the court.

The facts and circumstances of this case, to which we have before referred, show that the purpose of this suit was to recover the 12 per cent. damages and attorney's fees.

In the case of Whiteside v. Lafayette Fire Insurance Company, 143 La. 675, 79 So. 217, 219, the court said: "We find nothing in the statute to justify our limiting the imposition of the penalties to cases where insurance companies willfully refuse to pay what they owe."

In that case, though the defense may have been in good faith, payment of the amount claimed for the property destroyed by the fire was resisted under the defense therein urged.

. In the case of Buccola v. Natl. Fire Ins. Co. of Hartford, Conn., 18 La. App. 353, 137 So. 346, several defenses were presented to defeat the amount claimed by the assured for the property destroyed.

In the case of Isaac Bell, Inc., v. Security Ins. Co. of New Haven, Conn., 175 La. 599, 143 So. 705, 706, wherein a judgment of this court was reversed, the Supreme Court said: "In this case, the district judge and the Court of Appeal, First Circuit, held that the enforcement or nonenforcement of the section was addressed to the exercise of the sound discretion of the court, and where, as in this case, the question presented by the defendant was a debateable one, the defendant should not be penalized."

Further on in that opinion the court said: "We think that section 3 of Act No. 168 of 1908 is mandatory and must be given effect in every case where the insurance company resists payment of the whole or any part of a loss covered by its policy," etc.

In the instant case there is no defense presenting a debateable question as to the claim of the plaintiff for the destruction of the property which could address itself to the sound discretion of the court, nor is there any defense urged by defendant company to "resist payment of the whole or any part of a loss covered by the policy." The fact is that, soon after the residence had burned down, defendant company agreed to pay $1,900 for the loss suffered which was accepted by plaintiff; and, later, upon inquiry made as to when the claim would be paid, defendant wrote, through its general agency located at Dallas county to its local agent at Lake Charles, that the $1,900 would be paid by draft to be issued December 20, 1932. As promised in that letter, the draft was issued before the expiration of the sixty days from the proof of loss, the delay allowed under the statute. The draft was mailed to Lake Charles, where plaintiff was then living, but through error was addressed to a former agent of defendant company in that city, went astray, and was traced to Beaumont, Tex., but too late to have it in the hands of plaintiff before the expiration of the sixty-day period fixed by the statute.

The failure to pay within sixty days the amount covered by the policy was due entirely to an error for which defendant should not be penalized by the payment of the damages and attorney's fees claimed.

The other defense is that plaintiff made no demand on defendant company after the sixty days had elapsed before filing his suit.

The proof shows that defendant in November quite a while before the expiration of these sixty days, through its agent at Dallas, Tex., wrote to its local agent in Lake Charles that it would forward a draft for the $1,900 on December 20, 1932.

This was not only a clear admission of the debt, but carried with it the obligation of sending the money before the expiration of the sixty days to pay the claim. It appears, as above stated, that, after defendant company heard that the draft had not reached plaintiff because of the error referred to, defendant offered a duplicate draft in payment,

and made every effort possible to pay the claim.

Under such facts, we do not think that a demand for payment on defendant, either before or after the expiration of the sixty days, was necessary as a prerequisite to the filing of this suit.

On the other ground above discussed we are of the opinion, however, that defendant company was erroneously penalized by the imposition of damages and attorney's fees under the judgment appealed from.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that the demand by plaintiff for damages and attorney's fees be, and is hereby, rejected at his cost in both courts.