# Roccia v. The Prudential Insurance Company of America

*Joseph A. Matt,* for plaintiff.

*Frederick J. Shoyer* and *Kendall H. Shoyer,* for defendant.

MacDade, J., February 28, 1938.—Michael Roccia, plaintiff, brought a suit in assumpsit against defendant, The Prudential Insurance Company of America, to recover the amount claimed to be due on a policy issued by defendant on the life of plaintiff's father, Petro Roccia. The policy was dated April 14, 1930, in the sum of $1,000. It was issued at age 62 nearest birthday, and the insured died March 4, 1937.

The pleadings consisted of a statement of claim, affidavit of defense containing new matter, and plaintiff's reply thereto. In those portions of the pleadings, which were offered in evidence, it appears that, in and about the

month of December 1936, prior to the insured's death, defendant learned for the first time, through an affidavit supplied to it by plaintiff, that the insured was actually born in Italy in the year 1851 instead of the year 1868, and defendant subsequently secured a birth certificate corroborating this information and showing that the insured was born in the municipality of Venafro, Italy, on February 1, 1851.

The policy contained in its "General Provision", the following clause:

"Incontestability.—This policy shall be incontestable after one year from its date of issue, except for nonpayment of premium, but if the age of the insured be misstated the amount or amounts payable under this policy shall be such as the premium would have purchased at the correct age."

In addition to the above factual situation it is fair to state: (1) That the plaintiff paid the sum of $7.68 per month from April 14, 1930, until and including February 14, 1937, for a total of 83 months, or $637.44, and received back the sum of $424.31; (2) the check, defendant's exhibit B, was dated April 13, 1937, but not deposited until May 10, 1937. This we learn from plaintiff's brief, who also states that counsel for defendant had indicated that the question of acceptance in full settlement of all claims under the policy would not be raised at the trial, or otherwise, evidence that the check was not so accepted would have been presented by plaintiff; (3) the information as to the correct date of birth of the insured was supplied to defendant by plaintiff some time prior to the date of the death of the insured, and thereafter premiums were accepted by defendant; and lastly, the cross-examination of defendant's witness involved the age at issue, as raised by defendant in his affidavit of defense and new matter, paragraph 14, in the following words:

". . . and defendant avers that had this true age been given by the insured at the time of applying for said

policy, the same would have been issued to him at age 79 nearest birthday instead of age 62, had defendant so desired."

The issues as thus framed came on for trial on January 25, 1938, which trial resulted in a directed verdict for plaintiff for $606.39, being principal of $565 and interest from March 4, 1937, or a total of $606.39, reserving, however, a point of law, which was stated by the trial judge to be as follows:

"We will reserve a question of law, and that question of law will be under the facts of the case: Would the fact that plaintiff, deceased, gave his age at 62 years of age, and when he was really 79 years of age, come within the terms of the incontestability clause or without its terms?"

### Discussion

The question involved here is rather a narrow one, and its correct solution depends upon our interpretation of the principle of law anent the subject matter as enunciated in the cases of Sipp v. Philadelphia Life Ins. Co., 293 Pa. 292, and Mitchell v. Pennsylvania Mutual Life Ins. Co., 90 Pa. Superior Ct. 426.

Defendant contends that the question concerns the right of an insurance company to adjust the amount payable to the insured's correct age, after the age has been misstated at the time of applying for the policy, claiming that a provision in the contract gives the company defendant this right, and which provision is quoted in the above statement of facts pertaining to the "incontestability" feature relative to misstatement of age, which is in the language required by The Insurance Company Law of May 17, 1921, P. L. 682, sec. 410 (e), 40 PS §510.

For support of this interpretation, defendant relies upon Sipp v. Philadelphia Life Ins. Co., supra.

Plaintiff contends to the contrariwise, asserting that the contract of insurance upon the life of Petro Roccia having been in force for more than one year, namely, from April 14, 1930, until March 4, 1937, and since the

insured was above the age when any insurance could have been purchased, the company limiting its risks to those under 66, and since the premiums paid could not have purchased any insurance at the true age, the case does not involve a matter of reduction, but a contest of the entire amount, which the clause relating to incontestability prohibited. The case of Mitchell v. Pennsylvania Mutual Life Ins. Co., supra, is cited as support for this proposition.

In arriving at a proper construction to be placed on this provision, we assume that all insurance companies, undoubtedly, have age limitations beyond which they will not customarily issue insurance policies. The limitations vary from 50 upwards, probably depending on the particular insurance company and the type of insurance applied for. That all companies have tables of rates for ages beyond the regular limitation, and the amount of insurance purchasable for a given premium at any advanced age can be immediately ascertained. The words used in the policy are, "would have purchased", and these are the same words that are required by the statute. The phraseology used in the Pennsylvania statute may be found in the statutes of other States, among them Iowa, Mississippi, New York, and Delaware. When the language contained in a life insurance policy is required to be placed there by statute, the usual rule which requires an insurance policy to be construed most strictly against the insurer and most favorably to the insured, no longer applies: Frozine v. St. Paul Fire & Marine Ins. Co., 195 Wis. 494, 218 N. W. 845; Lewis, Executrix, v. Insurance Company of North America, 203 Wis. 324, 234 N. W. 499; Midkiff et al. v. North Carolina Home Ins. Co., 197 N. C. 139, 147 S. E. 812; Kramer v. The Western Assurance Co., 9 N. J. Misc. 1261, 157 Atl. 171; Buccola v. National Fire Insurance Company of Hartford, Conn., 18 La. App. 353, 137 So. 346; Mayfield et al. v. North River Ins. Co., 122 Neb. 63, 239 N. W. 197.

Thus, in Wilcox v. The Massachusetts Protective Assn., 266 Mass. 230, 235, 165 N. E. 429, the court said:

"The terms of the policy relating to notice are substantially in the words required or permitted by statute. The general rule that reasonable doubts arising from the language of a policy of insurance should be resolved against the company (*Farber* v. *Mutual Life Ins. Co. of New York*, 250 Mass. 250, 254) is not applicable to terms which the company is required by legislative act to incorporate, and the rule loses much of its force when the insurer has adopted the language of the statute in clauses not required but which the statute expressly permits. *Rosenthal* v. *Insurance Co. of North America*, 158 Wis. 550, 553. *Frozine* v. *St. Paul Fire & Marine Ins. Co.*, 195 Wis. 494, 496. *Mick* v. *Corporation of Royal Exchange Assurance of London*, 87 N. J. L. 607, 611. *Hamilton* v. *Royal Ins. Co. of Liverpool*, 156 N. Y. 327, 336."

The reason that the strict rule of construction no longer applies is because that rule is an application of the more general rule that any contract will be construed most strictly against the party preparing it: Guarantee Company of North America v. Mechanics' Savings Bank & Trust Co., 183 U. S. 402, 419, 46 L. ed. 253, 262; Home Ins. Co. of N. Y. v. Denver Western Baseball Co., 82 Colo. 86, 257 Pac. 265; Zimmerman v. Union Automobile Ins. Co., 133 Ore. 600, 291 Pac. 495; Farmers Mutual Co-operative Fire Ins. Co. v. Kilgore, 39 Ga. App. 528, 147 S. E. 725.

Naturally, when the insurance company is no longer responsible for the language that it had to put in its contracts, it should not be made liable for any difficulty that the court has in arriving at the proper construction. The fact that more apt language is available should not be held against the insurance company when it is not free to adopt the preferable phraseology.

We are concerned here with the amount of insurance that the premium actually charged and paid would pur-

chase in the event that this policy had been issued, as it was, at an incorrect age. We cannot concern ourselves with the original issue, because if the legislature thought it advisable that the parties should be held fast to the age originally stated, no permission to correct the contract after a misstatement of age had been discovered would be allowed to either party. The history of the present legislation may be traced in the Sipp case. It is sufficient to state that the present language was adopted for the purpose of permitting adjustments in the amount payable when the age was originally misstated. The legislature evidently thought it advisable that this correction should be permitted regardless of whose fault had caused the error, and irrespective of the existence or nonexistence of fraud.

From the testimony we glean that the insurance company, acting upon the information received as to insured's true date of birth, adjusted the amount payable at age 79, nearest birthday, instead of age 62, which reduced the amount payable from $1,000 to $424.31, and from this amount was deducted a loan with interest. Dividends and interest were added, and a check for the net amount of $292.72 was delivered to the beneficiary and accepted by him. Subsequently, this suit was brought by the beneficiary to recover the difference between $1,000 and $424.31 or $575.69.

The birth certificate, duly certified by the United States consul, and the canceled check were offered in evidence by defendant. The only witness who testified was James V. Hughes, assistant manager of defendant's actuarial department. He stated that the company had tables showing the premium and the amount of insurance of this type that could be purchased at age 79; that these tables had been duly adopted by the persons in authority at the home office; that the company could have issued this policy in April of 1930 at age 79, and that a premium of $7.68 per month would have purchased insurance to

the amount of $424.31 under a similar type of policy at the age of 79 on April 14, 1930. On cross-examination, over defendant's objection, the witness was asked if the company ever issued this type of policy beyond age 66 as an original issue, and he testified probably not. This was after he had already testified to the effect that it was quite common to reissue these policies at a higher age, when the original age had been misstated.

In view of these proven facts plaintiff contends that the "incontestability" clause applies, and he is entitled to a full recovery. We feel that the incontestability clause has no more application than it had in Doll v. Prudential Insurance Company of America, 21 Pa. Superior Ct. 434, and as stated by the Supreme Court in Sipp v. Philadelphia Life Ins. Co., supra, at page 297: "What was said by the court in the last cited decision is applicable here." The Sipp case seems to be adverse to the contention of plaintiff, and if it is, as we now hold, we must be guided by its reasoning. There the court speaks of the purpose and intent of such language as relating to the "adjustment" or "readjustment" of the sum payable in case of error. We are not concerned, therefore, with whether or not, under the rules of the company, a policy of insurance would have issued originally at the correct age, but, rather, are we concerned with the adjustment of the sum payable in those cases where the true age was not given at the time of applying for the policy. It is admitted by paragraph 11 of the pleadings in this case that the insured's age was misstated at the time of applying for the policy. We are not concerned, however, with the question of whether or not defendant would have issued the policy originally at the advanced age, but whether, when faced with this problem of having issued the policy at an incorrect age, it subsequently learns that the insured's actual age was beyond the age limit at which it customarily issued policies, the defendant is able to adjust the amount payable according to "fixed and definite standards, not subject to shifting or evasion".

A study of the incontestable clause shows that the word "but", as used therein, is an appropriate term to indicate an intention to limit or restrain the sense or effect of the incontestability clause. It indicates a "proviso, condition, qualification, or exception": 9 C. J. 1106. We are of the opinion that the incontestable clause does not prohibit the company from defending on the ground that an error or mistake as to age was actually made, whether fraudulently or not: Starck, Admr., v. Union Central Life Ins. Co., 134 Pa. 45. See also Doll v. Prudential Insurance Company of America, supra.

We think that the age adjustment provision of this policy can be enforced, not only because it forms an integral part of the contract, but for the further reason that this provision is in strict accord with the statutory direction of The Insurance Company Law, supra.

This clause has been similarly construed in the case of Kulpa v. Prudential Ins. Co. of America, no. 2, September term, 1934, Municipal Court of Philadelphia, Lewis, J., on April 5, 1935, in which case defendant issued a life insurance policy in the sum of $500, which policy stated that the age of the insured at the date of the policy was 60 years. The affidavit of defense filed in a suit on the policy avers that at the date the policy was issued the insured was in fact 65 years of age. It is further averred that the premiums actually charged and paid on said policy would have purchased insurance to the amount of $278, at the corrected age under the practice, rules, and custom of the defendant insurer. Defendant further points to the incontestable clause in the policy which provides:

"After this policy shall have been in force, during the lifetime of the insured, for one full year from its date, it shall be incontestable, except for nonpayment of premium, but if the age of the insured be misstated, the amount payable under this policy shall be such as the premium would have purchased at the correct age."

## Order

And now, February 28, 1938, the matter of defendant's motions for a new trial and for judgment non obstante veredicto coming on to be heard by the court in banc, together with oral arguments and briefs, after due consideration of the same, the court doth order and decree that:

1. Defendant's motion for a new trial be and is hereby dismissed;

2. Defendant's motion for judgment non obstante veredicto be and is hereby sustained; and

3. Prothonotary be and is hereby ordered and directed to enter judgment in favor of defendant, The Prudential Insurance Company of America, and against plaintiff, Michael Roccia, notwithstanding the verdict in favor of the said plaintiff, sec. reg. et sec. leg.