JANVIER, Judge.
Plaintiff, Mayo Romero, brought this suit for $497.37 against Maryland Casualty Company on a policy of collision insurance issued by that company, alleging that he had secured the policy; that the automobile truck covered by it had been damaged in collision; that the cost of making the necessary repairs was $547.37; that from this there should properly be deducted $50 because of a deductible clause in the policy, and that the said insurance company had refused to pay the balance, to-wit $497.37.
Defendant admitted that the policy had been issued, but averred that, in accordance with certain provisions of the policy, it had been cancelled by the defendant company prior to the occurrence of the accident.
In its answer defendant also averred that in the notice of cancellation, which had been sent to plaintiff by registered mail, he had been advised that: “Unearned Premium to date amounts to $109.52 which sum will be paid on demand by Agent.”
When the matter came to trial it was admitted that the truck had been damaged and that if there was liability under the policy, the amount to be recovered by plaintiff should be the amount sued for, to-wit $497.37.
Most of the facts which are involved are not in dispute. The plaintiff, who lives in New Iberia, Louisiana, apparently operates a plantation and requires insurance of various kinds, including what is known as collision insurance, that is to say, insurance under which the insurance company will pay for damage sustained by his own vehicle when such damage results from collision.
In New Iberia, there is an insurance agency known as “Lourdes Insurance Agency”, owned and operated by Madeline Viullcmot. This agency is the local agent of defendant company, of which Black, Rogers and Company, in New Orleans, is general agent.
The Lourdes Insurance Agency, apparently beginning in 1942, had been employed by plaintiff to secure many different policies and, at his request, had secured from the defendant company, through the general agent, the policy which is now sued on. This policy was made effective at 12:01 noon, on October 28, 1948, and was to be in effect for one year. The premium on this policy was not paid to the Lourdes Insurance Agency, nor to the general agent, nor directly to the company by Romero, but, at the expiration of sixty days from the issuance of the policy, the Lourdes Agency remitted to the company, through the general agent, the amount of the premium; in other words, the Lourdes Agency advanced for the account of Romero the premium which was due the company but which he had not paid. This was done because local agents are required to make remittances for all such premiums within sixty days and the Lourdes Agency, during the many years previous to the issuance of this policy, had extended credit to Romero, and merely added the amount of this premium to other amounts which were due to that agency by Romero. At that *647 time, Romero was indebted to the Lourdes Agency for several hundred dollars more than the .amount of this premium.
On January 26th, 1949, the defendant company, having decided to cancel the policy, mailed to Romero a notice of cancellation in which it was stated that the policy herein sued on “is hereby cancelled as of Noon 12:01 A. M. the 31st day of January, 1949 * * *In that notice there also appeared the statement, which we have already quoted, in which the insured Romero was advised that he could obtain the unearned premium by making demand on the local agent.
This notice was sent by registered mail to the residence of Romero and the return receipt card, signed by Mary Knott and dated “1-27-49”, was returned to defendant company. It is admitted that Máry Knott was a household servant of Romero.
It is conceded that the defendant company had the legal right to cancel-the policy on five days notice, but it is contended that the requirements of the Insurance Code of Louisiana were not complied with because the unearned return premium was not “actually paid” to Romero, and that therefore the attempted cancellation never became effective.
The principal portion of the Louisiana Insurance Code on which this contention is 'based is to be found in L.S.A.R.S. 22:636, Act No. 195 of 1948, Sec. 14.26.
“A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
“(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five days prior to the effective date of the cancellation.
“(2) Like notice' must also be so delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur thereunder.
ff*B sk
“C. * * *
’ “D. The portion of any premiurii paid to the insurer on account of the policy, unearned because of the cancellation and in amount as computed on the pro rata basis, must be actually paid to the insured or other person entitled thereto as shown by the policy or by any endorsement thereon, or be mailed to the insured or such person as soon as practicable following such cancellation. Any such payment may be made by cash, or by cheque, bank draft, or money order.”
Counsel for plaintiff argue that the above quoted requirement of the Louisiana Insurance Code is clear and unambiguous, and that it means that if an insurer desires, for reasons of its own, to cancel such a policy, it may do so, but that in order to make the cancellation effective, it must do two things: (1) It must give the notice of cancellation, and (2) it must pay directly to the insured, at the time of the attempted cancellation, the unearned premium.
Counsel for the insurer, on the other hand, maintain that no such obligation is placed upon the insurer by the above quoted provisions of the Insurance Code, and that all that the Code requires is that written notice must be given, and that if the notice is given, then there is placed on the insurer the obligation, within a reasonable time, to see that the unearned premium is returned.
Counsel say that that provision which appears in “A”, the first of the above quoted paragraphs, under which the cancellation may be effected upon compliance “with either or both of the following,” refers to the two paragraphs which immediately follow paragraph “A”, under the first of which paragraphs (1) it is provided that-the notice must be given to the insured, and under the second of which (2) it must be given also to the mortgagee, pledgee or other person having an interest where there is such mortgagee, pledgee or other person at interest, and that the alternative, “either or both of the following” found in that first paragraph does not in any way refer to the. last or paragraph “D” of the above quoted paragraphs, which is concerned only with the return of the unearned premium “as soon as practicable following such cancellation.”
*648 Counsel for defendant insurer also maintain that, even if the above quoted provisions of the Insurance Code could he interpreted as contended for hy plaintiff and even if, as the result of such interpretation, it should be held that cancellation may be effected only upon the giving of notice and the return of the premium at the same time, nevertheless where this is not done and the insured makes no objection to the action of the insurer in returning the unearned premium to the agent instead of directly to the insured, the insured, by such failure to object, waives his right to insist that the premium should have been paid actually and directly to him.
We have also given considerable thought to the possibility that, even if the above quoted provisions of the Insurance Code should he interpreted as contended by plaintiff, and even if there has been no waiver by the insured, in such a situation, of his right to demand that the return premium should be paid directly to him, possibly there was a compliance with all requirements by the return of the unearned premium to the agency of the company which, because of its relationship with the insured, had become the agent of the insured for the purpose of remitting the premium, and consequently, for the purpose of receiving back the unearned premium.
This contention is based on the theory that, where an insured goes to a local agent and asks that local agent to obtain insurance for him and arranges, either expressly or by custom, with that local agent for the local agent to advance such premiums as may be necessary, and the local agent, over a period of years, makes such advances and allows credit to the insured and over such period of years receives back such unearned premiums as in other cases may have been due to the insured, the insured establishes that local agent of the company as his own agent for the purpose of remitting premiums and receiving back unearned premiums, and that, therefore, when such agency was established by custom between the insured and the local agency, the repayment by the insurer to the local agency constituted actual payment to the insured himself.
In other words, the defendant company makes three alternative defenses. In the first place, it says that it complied with the requirement of the Code and, as a result, effected full cancellation when it gave notice of its intention to cancel and provided for the return of the premium “as soon as practicable following such cancellation/' and that, as a result, the full cancellation was established and it became merely the debtor of the insured; second, that if the insured had the right to contend that the return premium should have been remitted directly to him, he waived the right to rely upon this contention by not protesting when he received notice stating that the unearned premium could be obtained from the agent, or when he received from the agent on one or possibly two occasions a monthly statement of his account which showed that, on the books of the agent, his overdue balance had been credited with the amount of the return premium; and third, that in any event since, by custom, he had established the agency between himself and the local agent of the company for the limited purpose of paying premiums and receiving remittances, he could not be heard to say that this unearned premium was not returned directly to him.
When we consider the evidence concerning the so-called waiver of the right of plaintiff to insist that the return premium should have been paid directly to him simultaneously with the issuance of the notice of cancellation, we find that evidence very interesting.
In the first place, in spite of the unconvincing statement of the plaintiff that, though the notice of cancellation was sent by registered mail to his residence and was receipted for by his household servant, he himself never had it in his “possession”, we are well convinced that the' notice was received at his domicile and that, in all probability , he was well aware of its issuance and of its contents. And if he was, he was aware of the fact that the company advised him in that notice that the return premium could be obtained from the local agent.
In the second place, he follows up this unconvincing statement, that that notice never came into his “possession,” with fur- *649 t-her statements that he “imagined” that he had received statements from the local agent, but that he had not noticed that on such statements there was a credit entry showing that he had been credited with the amount of the return premium.
And, in the third place, the record shows without contradiction that later on, when he finally paid to the local agent the .balance due on that and on other premiums, he paid the exact amount which was the balance after taking credit for the amount of the unearned return premium.
We are therefore of the opinion that he not only knew of the cancellation, but that, after he was advised that the return premium could be obtained from the agent, he received other notices from the agent showing that he had been given credit for the return premium and that nevertheless during the next seven weeks he made no protest that the return premium had not been paid directly to him.
On the question of whether his dealings with the local agent constituted that agent his agent for the purpose of receiving for his account any unearned premium, the record shows that for about eight years the local agent had allowed him rather large credits on premiums and had remitted the amounts of such premiums to the various companies, and that, on several occasions, when return premiums had been due him, the local agent had received these return premiums for his account and had given him credit therefor on his unpaid balances, and that this particular premium had been advanced in full by the local agent and had not been repaid by him to the local agent until the final settlement of the account after the accident had occurred. It is on these facts that the defendant bases its contention that the plaintiff had constituted the local agent of the company his agent for the limited purpose of paying premiums for his account and receiving back unearned return premiums.
Nevertheless, since all counsel, in oral argument and in brief, have apparently sought to make the principal issue the question of whether the Louisiana Insurance Code, in such situation as this, requires that in order to effect a cancellation, the insurer must give the required notice and must simultaneously return the unearned premium directly to the insured, we have concluded to decide the matter on that issue.
Counsel for plaintiff point to the herein-above quoted paragraph “D”, and especially they direct attention to the words requiring that the unearned premium “must be actually paid to the insured * * *,” and they say that no other method of returning the unearned premium or of crediting it may be resorted to. ;
Counsel for the insurer say, on the other hand, that this requirement is not a condition precedent to cancellation, and that this becomes evident when it is noticed that such payment is to be made “as soon as practicable following such cancellation.” They say that, if the payment is to be made “following” the cancellation, notice is all that is necessary to effect complete cancellation, and that there then ensues the obligation of the insured to pay the premium “as soon as practicable.”
It is said by plaintiff that since the paragraph “A” hereinabove quoted provides that cancellation by the insurer may be effected by compliance with either or both of the following, it is clear that the first requirement is the giving of notice and the second is the actual payment of the unearned premium to the insured. We do not think so.
It seems to us that the purpose set forth in paragraph “A” above is to require that all persons at interest must be notified of the cancellation. In other words, if the insured alone is interested, then the notice need be given only to him. If, on the other hand, there is a mortgagee, pledgee or any other person at interest, then the notice must be given to the insured and also to such other person at interest. We note particularly in this paragraph “A” the provision that the cancellation may be effected as to any interest only upon compliance with either or both of the following. There then follow the two paragraphs referred to, and when we read paragraph “A” and paragraphs (1) and (2) immediately following it, we cannot avoid the conclusion that it was the purpose, as we have already set forth, to provide for a notice to the insured in the one case, or to the -insured and any *650 other party at interest in the other. In either case repayment of the unearned premium is not a condition precedent.
Lest it be felt that we have not taken into consideration the numerous cases cited by counsel for both parties, let us say that we have read those cases and have derived little assistance from any of them for the reason that in no one of them are the facts similar to those here, and especially for the reason that in no one of them was there involved, either in the policy which was sued on or in the statute on the subject, language similar to that which is contained in the Louisiana Insurance Code.
It is true that in one of the cases cited by counsel, Seaboard Fire & Marine Ins. Co. of New York v. Hines, Tex.Civ.App., 142 S.W.2d 538, the facts are almost identical with those found here, but the clause on which the plaintiff relied in support of his contention, that there had been no cancellation because the unearned premium had not been ■ remitted to him when notice of cancellation was given, was contained not in a statute but was found in the policy itself, and the language used was quite different from that set forth in the Louisiana Insurance Code.
The rule that ambiguous policy provisions must be construed strictly against the insurer has no application where the policy provisions result from legislation. In Buccola v. National Fire Ins. Co. of Hartford, Conn., 18 La.App. 353, 137 So. 346, 348, we said that in such situation “no liberality of construction should be indulged in behalf of an insured and no rule of strict construction operates against the insurer. The policy must, therefore, be construed according to principles of statutory construction, without any leaning toward one side or the other.” See, also, 44 C.J.S., Insurance, § 297, page 1192.
There are other cases cited by counsel for plaintiff in which there is language which seems to support the contention that unearned premiums must be returned as a condition precedent to effective cancellation. On the other hand, there are many cases relied on by defendant which seem to support the view that the return of the unearned premium is not a condition precedent and that cancellation may be effected by the mere giving of notice, followed by the return of the unearned premium as soon as practicable. For instance in Turney v. Allstate Ins. Co., 167 Pa.Super. 175, 74 A.2d 730, 732, the Superior Court of Pennsylvania, in discussing certain policy clauses holding that cancellation could be effected by the mere giving of notice, said: “Where, as here, there is no statute governing the particular type of insurance policy or requiring a different result, courts have enforced the terms of the contract as drawn, and have permitted the insurer to cancel upon proper notice without return of the unearned premium as a condition precedent.”
We do not see that a lengthy discussion of each of the cases cited would be of interest here. In no one of them were there involved the particular clauses which are found in our insurance code, and we have based our conclusion on our belief that the only interpretation which can be placed on these various pertinent paragraphs is that they permit cancellation by an insurer by the mere giving of notice provided repayment of the unearned premium is tendered as soon as practicable thereafter.
Having reached this conclusion we feel that plaintiff, after receiving the notice of cancellation and after receiving the statement or statements showing that the return premium had been credited on his unpaid balance, and having waited seven weeks without protest, could no longer rely on the right to insist that there had been no cancellation for the reason that the unearned premium had not “actually” been “paid” to him, even if it could be held— and we do not so hold — that he would have had that right had he protested when he was advised as to the method adopted by the insurer for accounting for the unearned return premium.
For these reasons the judgment appealed from is annulled, avoided and reversed and plaintiff’s suit is dismissed at his cost.
Reversed.