**66 So.2d 849**

## ROMERO v. MARYLAND CAS. CO.

No. 40632.

July 3, 1953.

Warren M. Simon and Thomas C. Wicker, Jr., New Orleans, for petitioner.

Deutsch, Kerrigan & Stiles and Breard Snellings, New Orleans, for defendant-respondent.

MOISE, Justice.

This case involves the application of the provisions of Chapter 14, § 26, of Act 195 of 1948, Louisiana Insurance Code, LSA–

Revised Statutes 22:636, relating to the cancellation of an insurance policy, and the method adopted as to the payment of the unearned premium. Since the law must be applied to the facts of the case, it is not necessary to decide that the return of the unearned premium in a reasonable time is a prerequisite for cancellation. The suit arises out of a claim for damages on a collision policy amounting to $497.37. Plaintiff claims that from the facts developed, he has coverage. Defendant contends that, under the law and the policy contract, there is no coverage because of cancellation of the policy. There was judgment in the district court in favor of the plaintiff, as prayed for, and, the Court of Appeal reversed this judgment, and dismissed the plaintiff's suit. After exhausting his remedies in the Court of Appeal, plaintiff applied for and was granted a writ of review—54 So.2d 645. The matter is now before us for decision.

Plaintiff applied for a collision policy with the Lourdes Insurance Agency of New Iberia, La., a sub-agency of Black-Rogers, representing the Maryland Casualty Company. The policy was delivered to the plaintiff but no premium was paid by him thereon. Plaintiff had an open account for the past eight years with the Lourdes Ins. Agency, and that Agency paid the premiums to the major insurance company.

On January 26, 1949, a notice was sent to Mayo Romero by Registered Mail, informing him that his policy with the Maryland Casualty Company was cancelled as of noon January 31, 1949. The amount of the unearned premium was $109.52.

On March 19, 1949, the damages claimed were sustained by plaintiff's truck. Payment demand by plaintiff was refused on the ground that the policy was cancelled, in conformity with the law. This suit followed.

Plaintiff contends that he is entitled to damages because he was not refunded the unearned premium on the policy involved, as a condition precedent to the cancellation of the policy, and that there was no compliance with LSA–R.S. 22:636, by payment of the unearned premium by cash, cheque, bank draft, or money order.

The assured testified that he did not know that the policy was cancelled.

The record shows that the cancellation notice was sent to plaintiff by Registered Mail, and there is a receipt signed by Mary Knatt, household servant of plaintiff. Here we have both the mailing and delivery.

The law provides that the notice be actually delivered or mailed. LSA–R.S. 22:636. Certainly, there was no dereliction of duty on the part of the U. S. Mails, and the receipt must be regarded more than a mere presumption. Avery v. Mayo, 161 La. 699, 109 So. 393; Reed v. Stinson, La.App., 188 So. 509; Ellzey v. Hardware Mut. Ins. Co. of Minnesota, La.App. 40 So.2d 24.

LSA–R.S. 22:636 provides:

"A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, * * * may be effected * * * upon compliance with * * * the following:

"(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five ·days prior to the effective date of the cancellation. * * *

   \*     \*     \*     \*     \*     \*

"(D). The portion of any premium paid to the insurer on account of the policy, unearned because of the cancellation and in amount as computed on the pro rata basis, *must be actually paid to the insured or other person entitled thereto as shown by the policy or by any endorsement thereon, or be mailed to the insured or such person as soon as practicable following such cancellation. Any such payment may be made by cash, or by cheque, bank draft, or money order.*" (Italics mine.)

■ The statute does not contemplate the inclusion of the unearned premium at the time of the notice of cancellation. The statute states that payment must be made to the insured or such person as is entitled thereto *"as soon· as practicable following such cancellation.".*

■ A study of the testimony discloses that the plaintiff had had a running account with the Lourdes Ins. Agency since 1942. In January, 1949, the plaintiff owed the agency some $600. When the policy was cancelled at the request of Black-Rogers of New Orleans, the agency merely credited the unearned premium against the account of plaintiff. No complaint was made with respect.to this manner of payment for the unearned premium until the accident in March, 1949. Plaintiff carried workmen's compensation, mortality on horses, wind insurance and fire insurance with the defendant. He testified that he received statements from the company setting forth the amounts due by him. He stated that he would not deny that on June 14, 1949, he paid $352.84, the balance due on his account, taking advantage of the credit for $109.65. The damages were sustained in March, 1949, and the policy was cancelled January 31, 1949.

Miss Vuillemot, Agent of the Lourdes Insurance Company, who handled the business of its New Iberia Branch office, testified on cross-examination, as follows:

"Q. Isn't it true you sent out monthly statements showing the balance due to you by Mayo Romero in his account with you? A. Yes.

"Q. Did you send out to, in the normal course of your business, a monthly statement to Mr. Romero showing the balance due on his account to you for January, 1949? A. Yes.

"Q. Do you have your ledger sheet with you? A. Yes.

"Q. In your answer to interrogatories you testified the balance owed by Mr. Romero to you October 1, 1948, was $302.44, is that correct?

"Mr. Conner: I object to this line of examination as irrevelant and immaterial, relating to events before the policy was issued and before the accident.

"Mr. Snellings: I want to show this gentleman had a running account with this agency.

"The Court: I will let it go to the effect. A. Yes.

"Mr. Snellings:

"Q. November 1, 1948, the balance owed by him to your agency was $506.07, is that correct? A. Yes.

"Q. Then on December 1, 1948, the same balance was owed by Romero to your agency, is that correct? A. Yes.

"Q. And on February 1, 1949, there was a balance owed by Romero to your agency of $352.84, is that correct? A. Yes.

"Q. Please tell what the reason was that the balance due on your account—Romero's account to you on January 1, 1949, was reduced from $669.19 to $352.84 as of February 1, 1949? A. *During the month of January Mr.*

*Romero cancelled out some of his stock policies which he had no further use for; that was cancelled on a short rate basis and return premiums were credited to his account.*

"Q. Did he ever make objection to his account being credited with the return premiums? A. *No, sir, then on January 31, he was credited with the amount of $109.52 which is the pro rata return premium due him on the cancellation of the policy as issued by the company.*

"Q. *That is the policy on which suit is filed?* A. Yes.

"Q. The collision policy? A. Yes.

"Q. Did he ever complain to you of having been given that credit of 109 dollars and some cents? A. No, sir.

"Q. How many years had Mr. Romero been doing business with your agency? A. Since 1942.

"Q. During that time is it not customary that you carry Mr. Romero on credit with reference to the policies he purchases? A. Yes.

"Q. And he pays his account when the crops come in or he gets money from the cane? A. Yes.

"Q. So it is customary that you actually extend your credit to Mr. Romero? A. Yes.

"Q. During that period isn't it also true he has cancelled out and short rated a number of policies? A. Yes.

"Q. Would the number of policies amount to as many as 50 or 60? A. The number of policies?

"Short rated or cancelled in that 8 year period? A. Oh, no.

"Q. About how many? A. I will tell you exactly.

"Q. I mean from 1942 to 1949? A. Mr. Romero does not cancel the policies until the operations are over, but in that period of time I would say not more than 20 have been cancelled at all his operational seasons.

"Q. When that cancellation is effected you credit his account with the unearned premium? A. Yes.

"Q. Has he ever complained to you of that practice? A. No.

"Q. When you send out monthly statements covering that period it shows on the statements that credit was given to him for the cancellation of the policy? A. Yes.

"Q. Have you had any of the Romero statements returned unclaimed by the postal authorities? A. No.

* * * * * *

"Q. On the other policies did he tell you how you should return the unearned premium? A. No, that was left to my discretion.

"Q. How did you return it? A. Credited his account.

"Q. He made no complaint of that to you? A. No, sir.

"Q. He acquiesced in that system? A. Yes.

"Q. That was over a period of eight years? A. Yes." (Italics mine.)

This testimony is uncontradicted.

The confirmation of proof of plaintiff's acquiescence as to the satisfactory method of returning the unearned premiums in policy dealings on more than twenty occasions is almost as strong as the confirmation of the proof of holy writ.

Judgment affirmed at plaintiff's costs.