F. S. ELLIS, Judge.
F & H Catering Service, Inc., the successor company to Vernon Huddleston and Marion D. Foster, d/b/a F & H Catering Service, brings this suit for a declaratory judgment, asking for a determination of the validity of the purported cancellation of a certain automobile insurance policy issued by United States Fidelity & Guaranty Company, through Globe Insurance Agency, Inc. Both Globe and United States Fidelity & Guaranty are made defendants herein,
The record in this case shows that appellants bought the automobile policy, with both collision and liability coverage, a workmen’s compensation policy, and a manufacturer’s and contractor’s liability policy, through Globe Insurance Agency, Inc., on January 23, 1964. The premium on the automobile policy was $365.16, and the advance premiums charged on the other two policies, which were subject to audit, amounted to $39.60. Of the total of $414.76 due, appellants paid $57.39 in cash, financed $300.00 by a premium note carried by the American Bank and Trust Company, and the balance was carried on open account by Globe.
Shortly after the policies were placed in force, appellants’ open account was charged with $46.31, which was an additional premium due as the result of an audit on certain policies which had been in effect prior to January 23.
It is clear that appellants were not prompt in their payments, either on the open account or on the monthly installments of $37.50, which were due at the bank. On at least two occasions, when appellants failed to make their payments at the bank, payment of the balance due on the note was demanded by the bank of Globe, which had guaranteed the account. However, in each case, the delinquent payments were made, and at the time of the cancellation of the automobile policy, the account at the bank was current.
In May, 1964, when a payment was late at the bank, a notice of the cancellation of the automobile policy was mailed to the appellants. The payment was made to the bank, and the policy was not cancelled. Again, in July, a payment at the bank was late, and another cancellation notice was sent. The payment at the bank was made and the sum of $25.00 was paid on the open account at Globe. Once again the policy was not cancelled.
On August 27, 1964, the cancellation notice which is the subject of this suit was mailed to appellants. It designated September 8, 1964, as the effective date of the cancellation. It appears that Marion D. Foster, one of the partners of F & H, talked to Mrs. Kemp, secretary and bookkeeper at Globe, one or two days after the notice was mailed, and at that time was told that Globe wanted the balance on the account. According to Mrs. Kemp, Mr. Foster agreed to pay $25.00 a week until the account was paid. However, no payment was made until September 15, seven days after the effective date on the cancellation. On that date, Mr. Foster appeared at the office of Globe and made a payment of $25.00, which was accepted by Mrs. *87 Gros, a part-time employee. At that time, Mr. Foster testified that he asked Mrs. Gros if that straightened them out, and that Mrs. Gros stated that it did. Mrs. Gros denied that she made any such representation or did anything other than accept the money and give Mr. Foster a receipt
In the meanwhile, on September 8, the cancellation was processed, and a return premium of $136.94 was credited to appellants’ account. On September 9, Globe repurchased the premium note from the bank for the sum of $79.55, which was debited on the account.
On September 25, 1964, the truck covered by the policy was involved in an accident, and Mr. Foster reported the accident to Globe. He was told by Mrs. Kemp that the policy had been cancelled, and that ■she would not accept the report of the accident. No tender of any return premium was made to F & H until the day of the trial of this case, at which time the sum ■of $7.17 was tendered and refused.
Although the workmen’s compensation and manufacturer’s and contractor’s liability policies were also cancelled as of September 8, no audit was made of appellants’ books for the purpose of determining the status of the premium until January, 1965. This audit resulted in a credit of $12.17, which, when applied to appellants’ account, left a net credit of $7.17 on Globe’s books. It was this amount that was tendered on February 4, 1965, during the trial ■of the case.
It is appellants’ contention that Globe and United States Fidelity and Guaranty Company are now estopped to deny coverage. They base this contention on the fact that Globe did not process the first two cancellation notices, and that appellants were thereby led to believe that a payment ■made after receipt of a cancellation notice would protect its insurance coverage. They cite in support of this proposition, Soleyman v. Woodmen of the World, 3 So.2d 466 (La.App.1941), and Morris v. Sovereign Camp W.O.W., 203 La. 507, 14 So.2d 428 (1943). These cases stand for the proposition
“that if an insurance company or its authorized agent, by its habits of business, or by its acts or declarations, or by a custom to receive overdue premiums or assessments without objection, or by a custom not to exact prompt payment of the same, or, in brief, by any course of conduct, has induced an honest belief in the mind of the policyholder, which is reasonably founded, that strict compliance with a stipulation for punctual payment of premiums or assessments will not be insisted upon, but that the payment may be delayed without a forfeiture resulting therefrom, it will be deemed to have waived the right to claim the forfeiture, or it will be estopped from enforcing the same, although the policy or certificate expressly provides for forfeiture for nonpayment of premiums as stipulated, and even though it is also conditioned that agents cannot waive forfeitures, or the policy provides that receiving overdue premiums is merely an act of courtesy.” Soleyman v. Woodmen of the World, supra.
It is clear that these cases do not apply in this case, in which Globe constantly pressed the appellants for payment, and never acquiesced in the failure to make payments timely.
Appellants’ second and main contention is that Globe failed to fulfill the statutory requirements for cancellation of a policy when it failed to make a timely tender to F & H of the return premium due on the automobile policy. R.S. 22:636 (D) reads as follows:
“The portion of any premium paid to the insurer on account of the policy, unearned because of the cancellation and in amount as computed on the pro rata basis, must be actually paid to the *88 insured or other person entitled thereto as shown by the policy or by any endorsement thereon, or be mailed to the insured or such person as soon as practicable following such cancellation. Any such payment may be made by cash, or by check, bank draft, or money order.”
Appellant contends that the failure of Globe to forward the amount of the unearned premium to F & H prior to the date of the accident prevented the cancellation of the policy. They cite in support of this contention Ellzey v. Hardware Mutual Insurance Company, 40 So.2d 24 (La.App.1949). However, the Ellzey case is based on the provisions of the policy therein and not on R.S. 22:636.
It would appear from the language of the courts in Romero v. Maryland Casualty Co., 54 So.2d 645 (La.App.1951), affirmed 223 La. 783, 66 So.2d 849 (1953), that payment of the unearned premium is not a condition precedent to cancellation. However, in that case, neither court concluded what would be the effect of failure to tender payment of the unearned premium “as soon as practicable” after the cancellation. In the Romero case, as in this case, the return premium was credited to the insured’s open account with the agency, but the insured clearly acquiesced in this procedure.
In dealing with policy provisions substantially similar to R.S. 22:636(D), the courts of other jurisdictions have held that failure to tender payment of unearned premium to the insured “as soon as practicable after cancellation” does not have the effect of invalidating such cancellation. Rather, they have held, it creates a debtor-creditor relationship between them, and payment of the return premium is considered as a consequence of the cancellation and not a condition thereof. Boston Insurance Co. v. Rash, 263 Ala. 201, 82 So.2d 177 (1955); Ampy v. Metropolitan Casualty Insurance Co. of New York, 200 Va. 396, 105 S.E.2d 839 (1958).
After a careful consideration of R.S. 22:636 and the authorities above referred to, we are of the opinion that payment of the return premium to the insured is not a condition precedent to cancellation, and that a cancellation once properly effected cannot be invalidated by the failure to make such payment "as soon as practicable” after cancellation.
The judgment appealed from is, accordingly, affirmed.
Affirmed.