190 So.2d 91

**F & H CATERING SERVICE, INC.**

**v.**

**UNITED STATES FIDELITY & GUAR-
ANTY COMPANY et al.**

No. 4817.

June 30, 1966.

Rehearing Denied Oct. 5, 1966.

Anthony J. Clesi, Jr., Gordon & Clesi, Baton Rouge, for plaintiff-appellant.

John S. Covington, Hunt & Covington, Robert J. Vandaworker, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for defendant-appellee-respondent.

McCALEB, Justice.

This is a suit for a declaratory judgment in which plaintiff, F&H Catering Service, Inc., seeks to have the Court hold that a certain automobile insurance policy, issued by the United States Fidelity & Guaranty Company, through Globe Insurance Agency, Inc., which was purportedly cancelled as of September 8, 1964, is in full force and ·effect. It is plaintiff's position that the cancellation was ineffective because the insurer did not pay the unearned premium as soon as practicable following the cancellation, as required by R.S. 22:636D of the Insurance Code, and, moreover, that the insurance company is estopped to deny coverage under the policy because F&H was allegedly lulled by prior dealings with and representations of the insurance agency into the belief that the purported cancellation was not to be effective.

The defendants, USF&G and its agent, Globe, resisted the demand insisting that the insurance was effectively terminated by cancellation of the policy on September 8, 1964.

The salient facts of the case, which are correctly stated by the Court of Appeal, are as follows: On January 23, 1964 F&H purchased through Globe, as agent for USF&G, the automobile liability policy together with a workmen's compensation policy and a manufacturer's and contractor's liability policy covering the operations of· F&H for a period of one year. The premium on the automobile policy was $365.16 and the advance premiums on the other two policies, which were subject to audit, amounted to $39.60. Of the total due F&H paid $57.39 in cash and financed $300 by a premium note ·which it gave to American Bank & Trust Company of ·Baton Rouge. The balance of advance premiums due was carried on an open account by Globe. Soon after the policies were issued the·open account of F&H was charged with an· adddition al premium of $46.31 resulting from an audit of certain policies which ·had been in effect prior to· January ·23, 1964. The record reveals that F&H was not prompt in paying its current indebtedness either on its open account or on the monthly installments due on its ·loan at the bank and at least on two occasions,,when payments were not made timely on the note, demand was made by the bank on .Globe, which had guaranteed the account. The delinquencies prompted Globe to have the insurer send notices of cancellation .on .the automobile policy. One·such notice was given in May, 1964 but, when payment was made to· the bank before the effective date of cancellation, the policy was continued in effect. Similarly, during .the month of July another cancellation notice was sent when F&H again failed to pay the installment at the bank on its due date. However, the payment was made before the effective date of cancellation of the policy.

On August 27, 1964 the insurer mailed another cancellation notice to F&H designating September 8, 1964 as the effective date of cancellation of the policy. One of the partners of F&H, a Mr. Foster, then called on the secretary and bookkeeper of Globe, a Mrs. Kemp, one or two days after the cancellation notice was mailed and was told that Globe wanted the balance due on the open account. Mrs. Kemp testified that Mr. Foster agreed to pay $25 per week until the account was liquidated. Nevertheless, no payment was made until September 15th, which was seven days after the effective date stated on the notice of cancellation. On that date, Mr. Foster appeared at the office of Globe and tendered $25 to a Mrs. Gros, a part time employee, who accepted the payment.

Meanwhile, on September 8th, the effective date of the notice, the cancellation was processed with the Casualty & Surety Division of the Louisiana Insurance Rating Commission and a return premium of $136.-94 was credited to the open account of F&H. On the following day, Globe purchased the premium note from the bank for $79.55, which was debited on the account.

On September 25, 1964 the truck covered by the policy was involved in a collision and Mr. Foster reported the accident to Globe. However Mrs. Kemp informed Foster that, since the policy had been cancelled, she would not accept the report of the accident. No tender of any unearned premium, other than the credit entry on the F&H account, was made to F&H until the date of trial at which time $7.17 was tendered and refused.

After hearing the evidence the district judge dismissed plaintiff's suit holding that the policy was validly cancelled as of September 8, 1964. On appeal, the Court of Appeal, First Circuit, affirmed the judgment, being of the opinion that the facts did not justify a holding that the defendants were estopped from claiming that the policy was effectively cancelled and, further, that failure of the insurer to tender payment of the unearned premium as soon as practicable, after cancellation did not invalidate such cancellation. (See 183 So.2d 85).

Thereafter, F&H applied to this Court for review contending that the Court of Appeal had erred in relying on cases from foreign jurisdictions for its conclusion that timely tender of the unearned premium to the policyholder was not a condition precedent to the effectiveness of the cancellation and that those pronouncements were contrary to the jurisprudence of this State. On the showing made, certiorari was granted and the case has been argued and submitted for our determination.

We address our immediate attention to the primary issue in this case, viz., whether R.S. 22:636 of the Louisiana Insurance Code, dealing with the cancellation of policies, contemplates that payment of the unearned premium by the insurer to the pol-

icyholder is a condition precedent to effective cancellation. R.S. 22:636 contains five separate paragraphs numbered "A" to "E" respectively. Paragraph "A" has two subparagraphs numbered (1) and (2). The salient portion of the section reads as follows:

"636. CANCELLATION BY INSURER.

A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, * * * may be *effected* as to any interest only upon compliance with either or both of the following:

"(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five days prior to the effective date of the cancellation.

"(2) Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur thereunder.

\*     \*     \*     \*     \*     \*

"D. The portion of any premium paid to the insurer on account of the policy, *unearned because of the cancellation* and in amount as computed on the pro rata basis, *must be actually paid to the insured* * * * or be mailed to the insured * *

as soon as practicable *following such cancellation.* Any such payment may be made by cash, or by check, bank draft, or money order. *   *   *" (Emphasis ours.)

It is seen from the foregoing provisions that Paragraph A deals entirely with the acts necessary to effect a valid cancellation where the policy, as in the case at bar, provides that it is cancellable at the option of the insurer. Paragraphs B & C, which we have not quoted since they are inapplicable here, pertain to the mechanics of mailing notice of cancellation and the affidavit of the individual making or supervising the mailing, which constitutes prima facie evidence of such fact, and paragraph E, which we have not quoted, refers to temporary life insurance or health and accident insurance policies, which are excepted from the provisions of the section. Paragraph D, which we have quoted above, makes it mandatory upon the insurer to pay the unearned premium to the policyholder as soon as practicable. But there is no language in this paragraph indicating that non-compliance on the part of the insurer renders the cancellation provided by Paragraph A invalid or, stated in another way, that payment of the unearned premium is a condition precedent to effective cancellation.

The question of whether or not tender or payment of unearned premiums is a condition precedent to cancellation of insurance policies by the insurer has not been settled

in this jurisdiction. It has been a subject of concern in many other jurisdictions and the general jurisprudence throughout the country is not entirely uniform. However, the vast weight of authority, as stated by text writers and the many annotations on the subject, is that non-compliance with policy or statutory provisions to the effect that the unearned premium shall be paid "as soon as practicable" creates nothing more than a creditor-debtor relationship between the parties and does not render the prior cancellation of the policy ineffective.[1]

The jurisprudence of this State on this subject is found in two cases, a 1949 decision of the Court of Appeal, First Circuit, in Ellzey v. Hardware Mut. Ins. Co. of Minnesota, 40 So.2d 24, and a 1951 decision by the Court of Appeal for the Parish of Orleans (now Fourth Circuit) in Romero v. Maryland Cas. Co., 54 So.2d 645 which

was affirmed by this Court on different grounds in 223 La. 783, 66 So.2d 849.

The Ellzey case arose prior to the effective date of Act 195 of 1948, Sec. 14.26, the provisions of which are identical with R.S. 22:636. In that matter the court, in construing the policy provisions on cancellation, declared by dictum that the return or tender of the unearned premium to the insured is generally a condition precedent to cancellation of a policy by the insurer.[2] However, we find, as above shown, that the weight of authority is to the contrary in cases involving policy or statutory provisions that payment of the unearned premium is to be made "as soon as practicable".

■ We are here considering statutory provisions (R.S. 22:636D) which, albeit mandatory, do not, in our opinion, either

---

1. Appleman, Insurance Law and Practice, Vol. 8, Sec. 5016, p. 626; Couch, Cyclopedia on Insurance Law, Vol. 6, Sec. 1443 (Supp.1965 at p. 88–93); Blashfield, Cyclopedia of Automobile Law & Practice, Vol. 6, Sec. 3547 (Supp.1964 at p. 60–62) and the many cases cited in support thereof; 16 A.L.R.2d 1204, par. 5 and the later case service with cases cited from Georgia, Illinois, Oregon, Pennsylvania, Tennessee, Alabama, California, Connecticut, Florida, Missouri, Ohio, Texas, Vermont, Virginia, Wisconsin and the Federal Courts. See also Creaghe v. Iowa Home Mut. Cas. Co. (CA 10 Colo.) 323 F.2d 981; Contra: South Carolina and Arkansas. See Elmore v. Middlesex Mut. F. Ins. Co., 219 S.C. 520, 65 S.E.2d 871 and Riverside Ins. Co. of America v. Parker, 237 Ark. 594, 375 S.W. 2d 225.

2. This was formerly the general rule (see 45 C.J.S. Insurance § 451, p. 96). But it depends on the provisions of the policy or statutory regulation. The recent cases are to the contrary. See 16 A.L.R.2d at page 1205, par. 5. Indeed, the same section of C.J.S. (45 C.J.S. § 451) states at page 98 " * * * and, under a provision for cancellation or notice with or without tender of the unearned premium, and for the refunding of such premium, if not then tendered, as soon as practicable after cancellation, *the giving of notice of cancellation without such tender terminates the policy on the specified date and creates a debtor and creditor relationship as to the unearned premium.*" (Emphasis ours.)

expressly or impliedly indicate that failure by the insurer to comply with the duty imposed on it to tender or pay the unearned premium "as soon as practicable" will invalidate the cancellation of the policy on the date specified in the notice. Rather, it seems implicit from the manner in which the language is employed that non-compliance does not arrest cancellation as the paragraph states that the unearned premium must be paid " * * * as soon as practicable *following such cancellation.*" Hence, it appears that such tender or payment is not a condition precedent to cancellation and the policy once cancelled does not, ipso facto, become reinstated upon the insurer's failure to pay the unearned premium as soon as practicable, notwithstanding the statutory command that it must be so paid. This was the view of the Court of Appeal in the Romero case (see 54 So.2d 645) and, although we affirmed its opinion on another ground when the case was considered on certiorari, we are now firmly convinced that that court correctly interpreted the meaning of R.S. 22:636.

Since we find that the notice of cancellation terminated the policy, we pass on to a discussion of whether the insurer is estopped from claiming cancellation by reason of any act or acts of its agent, Globe, in lulling plaintiff into the belief that, if the indebtedness was paid after the cancellation date, the insurance would be reinstated.

■ There can be no doubt, of course, that where it is shown, as here, that the notice of cancellation of a policy emanates from the insured's failure to promptly pay premium indebtedness to either the insurer or its agent and the latter gives subsequent assurance to the policyholder or represents to him that the policy will not be cancelled, if the delinquent premium is paid within a specified time, the insurer is thereafter estopped from insisting upon cancellation where the insured has relied on the representations or assurances to his detriment. Actually, such representations, if the conditions are complied with by the insured may well constitute a subsequent oral enforceable contract.

■ However, as properly concluded by the Court of Appeal, the evidence in this case falls short of establishing a compliance by F&H with the conditions stipulated by Globe under which effectiveness of the cancellation of the policy might have been avoided. Mr. Eicher, Manager of Globe, testified that previously, when notices of cancellation were sent, F&H would pay the bank and the notices would not be processed. In this instance, however, he informed Foster that the account was delinquent and, if it was not paid in full, the cancellation would take effect at the time specified in the notice. Mr. Foster, according to Eicher, told Eicher that he would pay

and did not do so (the following Friday was the date mentioned in the transcript). So the cancellation was then processed with the Casualty and Surety division of the State Insurance Rating Commission.

Mrs. Kemp, secretary and bookkeeper for Globe, testified that she spoke with Mr. Foster after the notice was sent by USF&G and, as per instructions from Eicher, she stated to Mr. Foster he would have to pay and the latter agreed to bring in $25.00 every week until the indebtedness was paid. Nevertheless, Mr. Foster did not make the payments as agreed so, on September 9th, the bank loan was repurchased by Globe.

Mr. Foster's position seems to be that since Mrs. Gros, a part time employee, accepted the payment of $25.00 on September 15th (the cancellation became effective on September 8th) the F&H account had been made current and he indicates that Mrs. Gros agreed that such was the case. Mrs. Gros denies that she ever told Mr. Foster that the insurance was extended or that he was covered.

In view of this evidence we hold, as did the Court of Appeal, that plaintiff has not shown by a preponderance of proof that it has complied with the verbal agreement as understood by Globe.

The judgment of the Court of Appeal is affirmed.