253 F.2d 81
 SWITCHMEN'S UNION OF NORTH AMERICA, General Adjustment Committee — Southern Pacific Company, Switchmen's Union of North America; Neil T. Speirs, as International Vice President, Switchmen's Union of North America, and John R. Burge, as General Chairman and as Acting Chairman, Switchmen's Union of North America, Appellants,
v.
SOUTHERN PACIFIC COMPANY, a corporation, Brotherhood of Railroad Trainmen, a voluntary association; The General Committee, Brotherhood of Railroad Trainmen, a voluntary association; J. J. Corcoran, as General Chairman, General Committee, Brotherhood of Railroad Trainmen; J. E. Teague, as Secretary, General Committee, Brotherhood of Railroad Trainmen, Appellees.
 No. 15148.
 United States Court of Appeals Ninth Circuit.
 April 30, 1957.
 On Rehearing March 5, 1958.
 
 Carroll, Davis & Burdick, Roland C. Davis, San Francisco, Cal., Anderson, Franklin & O'Brien, Portland, Or., Clifford D. O'Brien, Portland, Or., for appellants.
 Burton Mason, W. A. Gregory, San Francisco, Cal., for Southern Pacific Company.
 Hildebrand, Bills & McLeod, D. W. Brobst, Oakland, Cal., for respondent union.
 Before DENMAN, Chief Judge, and POPE and CHAMBERS, Circuit Judges.
 DENMAN, Chief Judge.
 
 
 1
 Switchmen's Union of North America, hereafter the Union, appeals from a decision of the district court on a complaint for declaratory relief filed by the Southern Pacific Company, hereafter the Company, holding valid a dues checkoff agreement between the Company and the Brotherhood of Railroad Trainmen, hereafter the Brotherhood. The Union in its cross complaint contended that this check-off agreement is invalid insofar as it is applicable to employees who are employed in the craft for which appellant Union is the certified bargaining representative.
 
 
 2
 It appears that the Brotherhood is the certified bargaining representative of the employees of the Company who are trainmen, and that the Union is the certified bargaining representative of the employees who are switchmen or yardmen. The Railway Labor Act provides that an employee in either of these crafts may satisfy the union shop agreement by belonging to either labor organization. 45 U.S.C.A. § 152, Eleventh (c). As applied to the facts in this case, this means that an employee although working as a trainman, a craft for which the Brotherhood is the bargaining representative, may belong to the Union, and an employee who is working as a switchman may choose to belong to the Brotherhood. In its complaint the Company alleged that its contract with the Brotherhood, which is the certified bargaining representative for the trainmen's craft, provides for the check-off of dues to the Brotherhood for all its members whether employed as trainmen or as switchmen,[1] and that this provision is valid under the Railway Labor Act. Both the Brotherhood and the Union were named defendants. The Brotherhood concurred with the Company's contention that the check-off agreement was valid, while the Union in its cross complaint alleged that it violated Section 2, Eleventh (b) of the Railway Labor Act, 45 U.S.C.A. § 152, Eleventh (b), insofar as it permitted the check-off of dues to the Brotherhood of its members who are regularly employed as switchmen, a craft for which appellant is the certified bargaining representative.
 
 
 3
 During the oral argument before this court the question arose whether the Company's complaint stated a cause of action warranting declaratory relief. Since the Company and the Brotherhood, as shown by their pleadings, agree that the provision in their contract for the check-off of dues is valid, there is hence no valid dispute between these two to invoke the declaratory jurisdiction of the district court, the Act providing for such relief "In a case of actual controversy within [the] jurisdiction * * *" of the district court. 28 U.S.C. § 2201. (Emphasis added.) Furthermore it does not appear that any switchman member of the Brotherhood is claiming that the conduct of the Company or the Brotherhood violates his rights under the Act, as in Tunstall v. Brotherhood, 1944, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, or under the contract between the employer and the union, as in Primakow v. Railway Exp. Agency, D.C.E.D.Wis.1941, 57 F.Supp. 933.
 
 
 4
 Nevertheless, the carrier's complaint seeks to establish jurisdiction because an entire stranger to these transactions, the Switchmen's Union, contends that the agreements between the carrier and the Brotherhood are illegal.
 
 
 5
 Let it be assumed as follows: That the Railway Act makes illegal the checkoff by the carrier of dues to the Brotherhood of Railroad Trainmen paid by switchmen who are not members of Switchmen's union, which is the bargaining representative for the switchmen's craft.
 
 
 6
 It seems clear that no member of the Switchmen's union is in any way personally affected by non-member switchmen so paying dues to the Brotherhood. It is equally clear that the Switchmen's union, having a right to dues only from its members[2] has no concern with the acts of switchmen who are not its members.
 
 
 7
 It is reasonably to be contended it is the desire of the Switchmen's union to increase its membership by drawing into it a comparatively large number of switchmen who prefer not to remain members of the Brotherhood, although employed in a craft for which the Union is the certified bargaining representative.
 
 
 8
 It is seen, then, that only if John Smith, or Bill Jones, mere travelers on the railroad, could seek the federal courts to stop the wrongful acts of the company and the railway union, could it be said that the Switchmen's union is entitled to do so.
 
 
 9
 In each case cited in support of jurisdiction one of the following situations obtained:
 
 
 10
 (1) The suit was between parties to a contract for a determination as to its validity, e.g. South Side Theatres, Inc., v. United West Coast Theatres Corp., 9 Cir., 1944, 178 F.2d 648; Empire Box Corp. v. Willard Sulzberger Motors Co., D.C.N.J.1952, 104 F.Supp. 762; or
 
 
 11
 (2) The suit was brought by a business man or organization against a government official for a declaratory judgment that a contract or business practice did not violate a statute, and for an injunction against a threatened prosecution by the defendant official who was claiming that plaintiff was violating the state law, e.g. Sunshine Mining Co. v. Carver, D.C.Idaho 1940, 34 F.Supp. 274; or
 
 
 12
 (3) An action by an employee against a union or employer claiming that a practice or contract of the defendant infringed rights guaranteed to the plaintiff by statute, e.g. Tunstall v. Brotherhood, 1944, 323 U.S. 210, 65 S.Ct. 235; or
 
 
 13
 (4) An action by a union to force the employer to accord to its rights guaranteed to it by statute, such as its right to bargain with the employer, e.g. Texas & New Orleans R. R. Co. v. Brotherhood, 1930, 281 U.S. 548, 50 S.Ct. 427, 74 L. Ed. 1034.
 
 
 14
 It appears that none of these cases is analogous to the present case.
 
 
 15
 The case is remanded to the district court to dismiss the complaint for lack of jurisdiction to afford the claimed relief, unless within thirty days after the case is remanded to it the Company file with the district court an amended complaint making a party thereto one with whom it has an actual controversy.
 
 On Rehearing
 
 16
 Appellants, hereafter Switchmen, appeal from a declaratory judgment of the District Court, sought by the Switchmen, holding that Switchmen, though the majority union and exclusive bargaining union of the railway yardmen, is not entitled under the provisions of 45 U.S. C.A. § 152 to have enjoined the Southern Pacific Co., hereafter the Carrier, from deducting from the pay of a yardman who joined the Brotherhood of Railway Trainmen, hereafter Trainmen, the dues of the latter union.
 
 
 17
 There is no dispute as to the facts. A minority of yardmen are members of the Trainmen's Union. The parties are agreed that under the existing law they may have such membership.
 
 
 18
 The disputed issue concerns an agreement of the yardmen in the Trainmen's Union and the Carrier that the latter shall deduct from their pay their dues to the Trainmen's Union and pay them over to that union. The Switchmen's Union contends the court erred in denying the injunction against such deduction by the Carrier from the pay of the yardmen in the Trainmen's Union and paying it over to the latter union.
 
 
 19
 Until 1951 such a union shop contract for collection of its dues by the employer was not permitted, 45 U.S.C.A. § 152 Fourth providing that "it shall be unlawful for any carrier * * * to deduct from the wages of employees any dues * * * payable to labor organizations * * *." However, in 1951 Congress added paragraph Eleventh to that Act, providing in part:
 
 
 20
 "Notwithstanding any other provision of this chapter * * * any carrier or carriers as defined in this chapter and a labor organization or labor organizations duly designated and authorized to represent employees in accordance with the requirements of this chapter shall be permitted
 
 
 21
 * * * * * *
 
 
 22
 "(b) to make agreements providing for the deduction by such carrier or carriers from the wages of its or their employees in a craft or class and payment to the labor organization representing the craft or class of such employees, of any periodic dues, initiation fees, and assessments
 
 
 23
 * * * * * *
 
 
 24
 "(d) any provisions in paragraph Fourth and Fifth of this section in conflict herewith are to the extent of such conflict amended." [Emphasis supplied.]
 
 
 25
 A dues check-off agreement is a collective bargaining agreement. N.L.R.B. v. Reed & Prince Mfg. Co., 1 Cir., 1953, 205 F.2d 131, 136. We think that in making the dues check-off agreement with the Trainmen applicable to the yardmen for whom the Switchmen's Union was the exclusive representative, the Carrier violated its obligation to bargain exclusively with the Switchmen's Union as to all matters pertaining to yardmen.
 
 
 26
 In so holding we are supported by 45 U.S.C.A. § 152 Fourth, providing that:
 
 
 27
 "The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter."
 
 
 28
 And by Section 152 Ninth, which provides the "representatives" of the employees in bargaining with the company shall be chosen by election.
 
 
 29
 This view is further supported by the statement of Senator Hill in charge of the bill in the Senate, which became the instant law. At the Senate hearing he introduced and endorsed the statement of George M. Harrison, representative of the Railway Executives Association, that:
 
 
 30
 "The bill before you modifies the present language only to the extent that the union shop and deduction of dues may be negotiated solely by agreement between the carrier and the designated collective-bargaining representative of a craft or class. The carrier would still be barred from deducting dues or entering into a union-shop agreement with any individual, minority union, or union which does not hold a collective bargaining agreement." [Emphasis supplied.]
 
 
 31
 The Carrier and the Trainmen's Union rely on a part of subparagraph (c) of Section Eleventh, providing that "no agreement made pursuant to subparagraph (b) of this paragraph shall provide for deduction from his wages for periodic dues * * * payable to any labor organization other than that in which he holds membership."
 
 
 32
 They contend that this provision of subparagraph (c) should be given an interpretation broad enough to create in the Carrier the right to make an agreement with yardmen, a minority group in the Trainmen's union, that the Carrier shall deduct from their wages their dues to Trainmen. The decision of the Supreme Court in Pennsylvania Ry. Co. v. Rychlik, 352 U.S. 480, 77 S.Ct. 421, 1 L. Ed.2d 480, decided since the filing of the able opinion of Judge Roche, holds that subsection (c) shall be construed narrowly. It states, 352 U.S. at page 489, 77 S.Ct. at page 426:
 
 
 33
 "the sole aim of [§ 152, Eleventh (c)] was to protect employees from the requirement of dual unionism in an industry with high job mobility * * *." [Emphasis supplied.]
 
 
 34
 And at page 492 of 352 U.S., at page 427 of 77 S.Ct.:
 
 
 35
 "It thus becomes clear that the only purpose of section 2, Eleventh (c) was a very narrow one: to prevent compulsory dual unionism or the necessity of changing from one union to another when an employee temporarily changes crafts." [Emphasis supplied.]
 
 
 36
 So construing subsection (c) we cannot accept the appellee's interpretation.
 
 
 37
 The judgment of the District Court is reversed and that court ordered to issue the injunction prayed for by the Switchmen's Union.
 
 
 
 Notes:
 
 
 [1]
 Provided, of course, that the individual members signed check-off agreements with the Company as required by 45 U.S.C.A. § 152, Eleventh (b)
 
 
 [2]
 45 U.S.C.A. § 152, Eleventh (c)