WILMA REYES AYALA ET AL., demandantes y recurridos, *v.* CARMEN MARÍA TORRES AMARAL ET AL., codemandados y recurridos, NATIONAL INSURANCE COMPANY, codemandado y recurrente, y METROPOLITANA DE PRÉSTAMOS, INC., codemandada y tercera demandada recurrida.

*Número:* CE-90-739          *Resuelto:* 17 de junio de 1992

*George M. Torres López*, abogado del codemandado y recurrente; *Ruben Castillo Marín*, abogado de los demandantes y recurridos; *Carlos R. Mondríguez Torres*, abogado de los codemandados y recurridos; *Wilfredo Borges*, abogado de la codemandada y tercera demandada recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

La génesis fáctica de este recurso[1] se remonta al 22 de septiembre de 1986. Ese día, Carmen M. Torres Amaral otorgó un Contrato de Ventas al por Menor a Plazos con Metropolitana de Préstamos, Inc. (en adelante Metropolitana), con el propósito de financiar dos (2) pólizas de seguros —entre ellas la G-9432— con National Insurance Co. (en adelante National), representada en el acto por su Agente General Carlos M. Benítez, Inc. Como directora del Colegio Rubí, Inc., la señora Torres Amaral aseguró a dicha institución. La póliza —cuya prima total fue $1,952— sería efectiva desde el 14 de septiembre de 1985 hasta el 14 de septiembre de 1988.

Satisfizo a Carlos Benítez, Inc., la suma de $585 y financió con Metropolitana el remanente de $1,367, más un cargo de $201.63 por financiamiento, para un total de $1,568.63. El contrato dispuso que dicha cantidad debería pagarse a partir del 20 de octubre de 1986 en nueve (9) mensualidades de $156.86 y una (1) última de $156.89, el 20 de julio de 1987. A modo de garantía se pactó: "Como garantía *cede* el comprador a Metropolitana de Préstamos, Inc. *cualquier reembolso por prima no devengada.*" (Énfasis suplido.) Petición de *certiorari, Exhibit* VIII, pág. 33. A renglón seguido del pagaré incorporado al contrato, se hizo

---

[1] Según los hechos considerados probados ante el Tribunal Superior, Sala de Humacao, en su *Sentencia Sumaria Parcial* de 27 de abril de 1990.

constar: "Esta obligación surge del pago hecho por la Corporación a la Compañía de Seguros, o a su Agente General, en liquidación total de la(s) primas(s) de la(s) póliza(s) arriba relacionada(s). La falta de pago de cualquier plazo a su vencimiento, otorga a la CORPORACION [Metropolitana] *el derecho de acelerar el pago de los plazos pendientes y a solicitar la CANCELACIÓN de la(s) póliza(s)....*" (Énfasis suplido.) Íd.

La señora Torres Amaral no pagó el mes de diciembre. Por ello, Metropolitana ordenó a la *National* la cancelación de la póliza, efectivo el 17 de enero de 1987. Así se hizo y se notificó. Después, el 9 de marzo, Metropolitana recibió el importe de dos (2) mensualidades, las cuales, naturalmente, se adjudicaron a los meses de diciembre y enero. *Para el 11 de marzo de 1987 Metropolitana le notificó que debería remitir el pago de febrero en o antes del 20 de marzo de 1987, para poder reinstalarle la póliza. No lo hizo.*

Sin embargo, con posterioridad a dicha fecha, la Sra. Torres Amaral continuó haciendo pagos a Metropolitana. A pesar de ello, la póliza no fue reinstalada debido a que los pagos se adjudicaron a las deudas anteriores y *nunca remitió pagos suficientes para cubrir la totalidad de la deuda por concepto de meses atrasados*. El último fue recibido por Metropolitana el 14 de septiembre de 1987. El 6 de octubre de 1987 ésta recibió de la *National* el reembolso por concepto de primas no devengadas.

El 8 de junio de 1987, la niña Cindaliz Ruiz Reyes sufrió un accidente mientras asistía al campamento de verano ofrecido por el Colegio Rubí, Inc. Como consecuencia, su madre, por sí y en representación de su hija, demandó en el Tribunal Superior, Sala de Humacao, al Colegio Rubí y a la *National.*

Previo ciertos trámites, el tribunal (Hon. Luis Mojica Sandoz, Juez) dictó Sentencia Sumaria Parcial. Invocó a *Casanova v. P.R.-Amer. Ins. Co.*, 106 D.P.R. 689 (1978), y

concluyó que la devolución de las primas no devengadas por *National* era un requisito indispensable para la efectividad de la cancelación de la póliza, lo cual no hizo. Por tal motivo resolvió que la póliza estaba en vigor al momento de ocurrir los hechos relatados en la demanda.

Inconforme, a solicitud de *National*, mediante orden de mostrar causa, revisamos.

## II

La presente controversia nos obliga a examinar las variantes que generan los supuestos cuando la cancelación de una póliza es hecha a solicitud del asegurado o por la aseguradora a instancia propia por algún motivo válido. La cuestión no sólo es novel sino singular, pues, en Puerto Rico no existe legislación que la regule. Casuísticamente sólo tenemos el pronunciamiento en *Casanova v. P.R.-Amer. Ins. Co.*, supra, pág. 695, a los efectos de que: "La cancelación obliga, para ser válida, a la devolución al asegurado de las primas correspondientes al período que a partir de su efectividad restaría hasta la fecha de expiración de la póliza." Aclaramos, sin embargo, que allí la cancelación fue efectuada *por la aseguradora* debido a su deseo de retirarse del mercado. En éste y otros extremos, veremos que *Casanova v. P.R.-Amer. Ins. Co.* supra, es distinguible del caso que nos ocupa.

En Estados Unidos la jurisprudencia varía. Algunas jurisdicciones sostienen que la devolución de las primas no devengadas, *por parte de la aseguradora*, salvo pacto en contrario, es necesaria para validar la cancelación de la póliza. 17 *Couch on Insurance 2d (Ed. rev.)* Secs. 67:242 y 67:244 (1983); 6A *Appelman, Insurance Law & Practice (Berdal ed.)* Sec. 4189 (1972); 43 Am Juris 2d Elections, Sec. 399 (1982); 45 *Corpus Juris Secundum* Sec. 451; *International Harvester Credit Corp. v. Wilkie*, 695 F.2d 231 (6to Cir. 1982); *Boston Ins. Co. v. Read*, 166 F.2d 551 (10mo

Cir. 1948); *Annes v. Carolan-Graham-Hoffman*, 168 N.E. 637 (1929); *Georgia Mut. Ins. Co. v. Fraser*, 264 S.E.2d 315 (1980); *Home Ins. Co. v. Thunderbird, Inc.*, 338 So. 2d 391 (1976). Esa ruta decisoria obedece al enfoque siguiente:

> [S]i consideramos lo severo que es, que una parte que no ha cumplido sus obligaciones contractuales, pueda a su voluntad terminar el contrato sin restituirle a la parte que lo ha cumplido cabalmente, a menos que surja de un lenguaje claro, que no deje duda alguna al respecto, no debemos resolver que existió la intención de así pactarlo. (Traducción nuestra.) *Grant Lumber Co. v. North River Ins. Co.*, 253 F.2d 83, 87 (D. Idaho, 1918).

Sin embargo, cuando la cancelación es solicitada por *el asegurado*, no estamos ante un mero expectador sujeto a sufrir las consecuencias de las actuaciones de otro. Se trata del protagonista principal que afirmativamente pide la terminación a la aseguradora. Ante esa situación, otras jurisdicciones siguen la norma de que la devolución de las primas no devengadas *no* es un requisito *sine qua non.*

> A pesar de que el pronto reembolso de las primas no devengadas es requerido por ley y la jurisprudencia, *no es una condición precedente para la cancelación de la póliza. ... F & H Catering Service v. United States Fid. & Guar. Co.*, 249 La. 667, 190 So. 2d 91 (1966). La cancelación, pendiente el reembolso, sólo crea una relación de deudor-acreedor entre el asegurado y la aseguradora. (Traducción nuestra y énfasis suplido.) *Roberson Adv. Serv. v. Assoc. Agencies*, 543 So. 2d 960–964 (1989).

Véanse, además: *Couch*, supra, Sec. 67:250; 43 Am Juris, *supra*, Sec. 407; *Wolverine Insurance Company v. Taylor*, 312 So. 2d 699 (1975); *Vaughn v. Great American Insurance Co.*, 390 S.W.2d 622 (1965); *Hardware Mutual Casualty Company v. Beals*, 158 N.E.2d 778 (1959); *Farmers' Store v. Delaware Farmers' Mut. Fire Ins. Co.*, 59 N.W.2d 889 (1953).

## III

■ El caso ante nos trasciende el binomio clásico de asegurado-asegurador. Fue la Financiera Metropolitana y no el asegurado quien solicitó la cancelación. Y evidentemente su actuación fue motivada por la falta de pago, mediante aceleración de toda la deuda, según pactado y autorizado en el contrato. No estamos, pues, ante una acción unilateral por parte de la aseguradora *National*.

En estas circunstancias, el tratamiento justo es equiparar la solicitud de cancelación a una iniciada por el asegurado. Como se ha dicho, la financiera "se coloca en los zapatos del asegurado cuando cancela una póliza de seguros [por la falta de pagos por parte del asegurado]". *Georgia Ins. Co. v. White*, 378 S.E.2d 523, 526 (1989). Véanse, también: *Prudential Prop. & Cas. Ins. Co. v. Safeguard Mut. Ins.*, 528 F. Supp. 709 (1981); *Northland Ins. Co. v. Walls*, 436 A.2d 61 (1981); *Sweers v. Malloy*, 281 N.Y.S.2d 693 (1967).

■ Esta determinación hace innecesario que evaluemos el aspecto sobre la tardanza de *National* en la devolución de las primas no devengadas a Metropolitana. A fin de cuentas, cuando es la compañía financiera de primas quien solicita la cancelación *debido a la falta de pagos por parte del asegurado*, su efectividad es inmediata. Véanse: *Black v. Globe American Cas. Co.*, 482 N.E.2d 1278 (1984); *Great Southwest Fire Ins. Co. v. Huss*, 433 A.2d 1169 (1981).

Por los fundamentos expuestos, *se expedirá el auto y se dictará sentencia mediante la cual se desestime la demanda contra la National Ins. Co.*

El Juez Asociado Señor Fuster Berlingeri disintió sin una opinión escrita. El Juez Asociado Señor Rebollo López no intervino.