EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Eurolease<br><br>Linda S. Miranda Ortiz, et al.<br><br>Recurridos<br><br>v.<br><br>Cooperativa de Seguros Múltiples de Puerto Rico<br><br>Peticionarios | Certiorari<br><br>2015 TSPR 145<br><br>193 DPR ____ |
|---|---|

Número del Caso: CC-2013-855

Fecha: 29 de octubre de 2015

Tribunal de Apelaciones:

    Región Judicial de Caguas

Abogada de la Parte Peticionaria:

    Lcda. Mildred Arroyo Figueroa

Abogado de la Parte Recurrida:

    Lcdo. Luis E. Laguna Mimoso
    **Abogado de Linda S. Miranda Ortiz**

    Lcdo. Ricardo Pérez Pietri
    **Abogado de Eurolease**

Materia: Seguros - Cancelación de póliza en contrato de venta al por menor a plazos.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eurolease

Linda S. Miranda Ortiz, et al.

    Recurridos

       v.

                               CC-2013-855      Certiorari

Cooperativa de Seguros
Múltiples de Puerto Rico

    Peticionarios


Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo


San Juan, Puerto Rico, a 29 de octubre de 2015.

En el presente caso nos corresponde resolver si a raíz de nuestra determinación en S.L.G. Francis-Acevedo v. SIMED, 176 DPR 372 (2009), una institución que financió una póliza de seguro mediante un contrato de venta al por menor a plazos, puede solicitar la cancelación de la póliza conforme a sus términos y condiciones, a pesar de que el contrato de financiamiento no se haya hecho formar parte de la póliza. Contestamos en la afirmativa.

I.

El 21 de agosto de 2003, la Sra. Linda S. Miranda Ortiz (recurrida) suscribió un contrato de arrendamiento de vehículo con Eurolease. Por medio de ese contrato, la recurrida se comprometió a obtener a su costo un seguro contra toda pérdida. El 31 de agosto de 2004, la Cooperativa de Seguros Múltiples de Puerto Rico (Cooperativa) emitió la póliza PAP-1356026 (contrato o póliza de seguro) a favor de la recurrida para asegurar el vehículo arrendado con una cubierta "full cover". La póliza tuvo un costo total de $1,115.00.

Por su parte, la recurrida solicitó un *Contrato de venta al por menor a plazos* (contrato de financiamiento) para el financiamiento de primas con el Banco Cooperativo de Puerto Rico (Banco). Dicho contrato establece que la recurrida se obligó a pagar un pronto pago de $404.00 y seis plazos de $125.61 cada uno, para un total por concepto de primas de $1,115.00 y $42.66 por cargos por el financiamiento. Cabe mencionar que este contrato de financiamiento de primas no se hizo formar parte de la póliza que nos ocupa.

Así, el contrato de seguro disponía que el mismo sería efectivo a la fecha en la que la aseguradora recibiera el pronto pago de un mínimo de veinte por ciento (20%) de la prima total anual a ser pagada, lo cual ocurrió el 31 de agosto de 2004, con el pronto pago

de $404.00. Luego de ese momento, y según lo establecido en el contrato de financiamiento, la recurrida estaba obligada a emitir los pagos mensuales a partir del 1 de octubre de 2004 hasta el 1 de marzo de 2005. El vencimiento de dichos pagos se produciría el día primero de cada mes y luego de 15 días de vencido el pago entonces aplicarían cargos por atraso.

La recurrida realizó el primer pago el 15 de octubre de 2004, por la cantidad de $131.89. El referido cheque incluía el pago mensual de financiamiento para el mes de octubre y una penalidad por haberse realizado con atraso. Los siguientes tres plazos -noviembre 2004, diciembre 2004 y enero 2005- fueron pagados con un cheque por $389.39, el cual fue emitido el 12 de enero de 2005 y recibido por el Banco el 19 de enero de 2005. Al igual que el pago anterior, este cheque reflejó la cantidad acordada en el contrato por concepto de mensualidad, más una penalidad correspondiente a los atrasos. Con este pago, la cuenta de la recurrida quedo al corriente hasta enero de 2005.

Así las cosas, la recurrida no realizó el pago correspondiente al 1 de febrero de 2005. Este incumplimiento provocó que el Banco solicitara a la Cooperativa la cancelación de la póliza. Así pues, conforme al contrato de financiamiento, la falta de pago de cualquier término vencido por más de quince días

conlleva la renuncia de la recurrida a la cubierta de la póliza y otorga al Banco el poder de cancelar la póliza y declararla vencida.[1] De esta forma, el 22 de febrero de 2005, la Cooperativa notificó a la recurrida que su póliza sería cancelada el 5 de marzo de 2005 si el Banco no recibía el pago adeudado en los diez días subsiguientes a la notificación. No se recibió tal pago, por lo que se procedió a cancelar la póliza.

Posteriormente, el 6 de junio de 2005, la recurrida sufrió un accidente en el vehículo arrendado. La Cooperativa denegó cubierta por dicho accidente alegando que la póliza había sido cancelada el 5 de marzo de 2005, más de tres meses antes del accidente.

Por su parte, Eurolease demandó a la recurrida reclamando $28,106.31 por concepto de la pérdida del vehículo. La recurrida contestó la demanda y, además, presentó una demanda contra tercero en la que incluyó a la Cooperativa para que respondiera como aseguradora del vehículo por la cantidad que le reclamaba Eurolease. Oportunamente la Cooperativa contestó la demanda. En esencia, rechazó responsabilidad alguna por los daños reclamados y adujo que la póliza no estaba vigente a la fecha del accidente porque fue cancelada previamente por falta de pago.

---

[1] Apéndice de la Petición de *certiorari*, pág. 169.

Concluido el descubrimiento de prueba, tanto la Cooperativa como la recurrida presentaron mociones de sentencia sumaria. El foro de instancia ponderó las mociones presentadas por ambas partes y dictó sentencia a favor de la recurrida el 5 de octubre de 2010.

Inconforme con el dictamen, el 5 de noviembre de 2010, la Cooperativa acudió ante el foro apelativo intermedio. En síntesis, alegó que el foro de instancia erró al resolver sumariamente el caso cuando existían controversias de hecho y al interpretar incorrectamente el derecho. El 2 de febrero de 2011, la recurrida presentó su alegato en oposición. El Tribunal de Apelaciones dictó sentencia el 25 de junio de 2013 en la cual confirmó el dictamen del foro de instancia. En esencia, el tribunal apelativo intermedio entendió que la aseguradora estaba impedida de cancelar la póliza, pues si el contrato de financiamiento no se hace parte de la póliza, la falta de pago a una entidad que otorga el financiamiento de una póliza no puede ser equiparado a la falta de pago a la aseguradora como fundamento para la cancelación según establecido en la póliza.

El 17 de julio de 2013, la Cooperativa presentó una moción de reconsideración, en la que adujo que el Tribunal de Apelaciones no había analizado la totalidad de los errores presentados. Además, alegó que dicho tribunal erró al aplicar -sin mayores consideraciones- la

doctrina establecida en S.L.G. Francis-Acevedo v. SIMED, 176 DPR 372 (2009), pues -a su entender- los hechos del referido caso eran muy diferentes a los hechos del caso de autos. El 6 de septiembre de 2013, la recurrida presentó un escrito en oposición a la moción de reconsideración. Sin embargo, previo a esto, el 29 de agosto de 2013, el Tribunal de Apelaciones había denegado la moción de reconsideración, aunque se notificó posteriormente el 10 de septiembre de 2013.

Aún inconforme, el 10 de octubre de 2013 la Cooperativa acude ante esta Curia mediante un recurso de *certiorari*. En su escrito, plantea la siguiente serie de señalamientos de error.

1) *Erró el Honorable Tribunal de Apelaciones en su análisis e interpretación del caso Acevedo Mangual v. Simed, 176 DPR 372 (2009), y al confirmar la determinación del Tribunal de Primera Instancia que declaró con lugar la Moción de Sentencia Sumaria presentada por la parte recurrida y declaró no ha lugar la solicitud de Sentencia Sumaria radicada por la peticionaria.*

2) *Erró el Honorable Tribunal de Apelaciones cuando dirimió la presente controversia, incurriendo en evidente contradicción con Riego Moreno v. Quiñones, et als., KLAN201200041, un caso anterior del mismo foro.*

3) *Incidió en error el Honorable Tribunal de Apelaciones, cuando equiparó la Póliza de Seguro Comercial de Impericia Médica o "claims made" considerada en Acevedo Mangual v. Simed, 176 DPR 372 (2009), con la póliza de automóvil personal, objeto de análisis en el presente caso.*

4) *Erró el Honorable Tribunal de Apelaciones al concluir que la cancelación efectuada por la aseguradora en Acevedo Mangual v. Simed, 176 DPR 372 (2009), es igual a la solicitada por el Banco Cooperativo, en la presente situación de hechos.*

5) *Incidió en error de derecho el Honorable Tribunal de Apelaciones, al no reconocer el derecho de cancelación que tiene el Banco Cooperativo, asegurado subrogado por medio del Contrato de Venta al Por Menor.*

6) *Incurrió en error de derecho el Honorable Tribunal de Apelaciones, cuando confirmó al Tribunal de Primera Instancia en su adjudicación de las Sentencias Sumarias presentadas por la parte peticionaria y la parte recurrida, sin que aplicara la doctrina establecida en Reyes Ayala v. Torres Amaral, et al., 130 DPR 743 (1992).*

7) *En la alternativa, incidió en error de derecho el Honorable Tribunal de Apelaciones al confirmar al Tribunal de Primera Instancia cuando declaró ha lugar la Moción de Sentencia Sumaria presentada por la parte demandada existiendo controversia genuina sustancial sobre hechos materiales.*

El 28 de febrero de 2014 expedimos el recurso de *certiorari* y, el 24 de abril de 2014 concedimos a la parte recurrida un término para presentar su alegato. Luego de varios incidentes procesales, con el beneficio de la comparecencia de ambas partes, procedemos a resolver la controversia.

II.

A pesar de que la Cooperativa ha reclamado la comisión de siete errores por parte del Tribunal de Apelaciones, la médula de su reclamación se circunscribe a que el Tribunal de Apelaciones hizo una interpretación

errónea de nuestra jurisprudencia en S.L.G. Francis-Acevedo v. SIMED, supra. A estos fines, y por entender que es la controversia que requiere nuestra intervención, procedemos a discutir el derecho aplicable de manera limitada a si una institución que financió una póliza de seguro mediante un contrato de venta al por menor a plazos, puede solicitar la cancelación de la póliza, a pesar de que el contrato de financiamiento no se haya hecho formar parte de la póliza. De antemano, respondemos en la afirmativa y, a su vez, aclaramos nuestra pasada jurisprudencia al respecto.

El Código de Seguros de Puerto Rico, en su Art. 1.020, 26 LPRA sec. 102, define el contrato de seguro como aquel por "el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". En lo pertinente, el Artículo 11.270 del Código de Seguros, 26 LPRA sec. 1127, regula las formas de terminar un contrato de seguro. El propio artículo establece que:

> (1) El asegurador no podrá cancelar un contrato de seguros después de haber estado en vigor por un período de sesenta (60) días o más, excepto por la falta de pago de prima y por aquellos fundamentos que se especifican en la póliza. Disponiéndose, que **el asegurado podrá solicitar la cancelación del contrato de seguros de acuerdo con los términos especificados en la póliza.**
>
> A petición del asegurado el asegurador deberá especificar a aquél los fundamentos para la

cancelación. El Comisionado mediante reglamentación determinará los seguros a los cuales aplicará este inciso y el procedimiento a seguir para la cancelación de dichos seguros.

(2) En adición a este derecho y el procedimiento para la cancelación de un contrato de seguro, bien sea por el asegurador o por el asegurado, según se exprese en la póliza, el Comisionado podrá ordenar la inmediata cancelación de cualquiera póliza obtenida o efectuada en violación de este título, excepto cuando la póliza no fuere por sus términos cancelable por el asegurador y el asegurado no hubiere participado a sabiendas en dicha violación.

Como regla general, en el campo de los seguros las partes no tienen derecho a rescindir o cancelar el contrato, excepto que se le permita por un estatuto o que las partes así lo han estipulado o consentido expresamente en el contrato, o si una de las partes ha incumplido el contrato.[2]

En lo pertinente, el contrato de seguro en el caso de autos establece entre sus cláusulas y condiciones lo siguiente:

**<u>TERMINACIÓN</u>**

1. Cancelación
   Esta póliza puede cancelarse, durante el periodo de vigencia de la misma, de la manera siguiente:
a. El asegurado nombrado en las Declaraciones podrá cancelarla del modo siguiente:
(1)      (…)
(2)      dándonos una notificación escrita por adelantado de la fecha en la que entrará en vigor la cancelación.[3]

---

[2] <u>Casanova v. P.R.-Amer. Ins. Co.</u>, 106 DPR 689, 694 (1978).

[3] Apéndice de la Petición de *Certiorari,* págs. 150 y 157.

En cuanto al efecto de la cancelación, hemos establecido que la misma termina los derechos y obligaciones de las partes a partir del momento en que es efectiva.[4] Una vez cancelada la póliza, el asegurado no es responsable del pago de primas posteriores a la cancelación y el asegurador queda libre de toda responsabilidad por hechos que surjan después de ser efectiva la cancelación.[5] Cuando la cancelación es a petición de la compañía aseguradora, para ser válida es requisito previo la devolución de las primas correspondientes al período que a partir de la cancelación restarían hasta la fecha de expiración de la póliza.[6]

En Reyes Ayala v. Torres Amaral, et al., 130 DPR 743 (1992), este Tribunal tuvo la oportunidad de atender la controversia en cuanto a si una institución financiera que accede a la solicitud de financiamiento de una póliza de seguro puede solicitar su cancelación ante el impago por parte del asegurado. En aquel entonces esta Curia estableció que dicha determinación dependerá de los términos y condiciones que las partes han acordado en el contrato de financiamiento.

El mencionado caso es uno bastante similar al que hoy nos ocupa. En aquella ocasión, la asegurada había

---

[4] Casanova v. P.R.-Amer. Ins. Co., 106 DPR 689, 695 (1978).

[5] Coop. Ahorro y Créd. Oriental v. S.L.G., 158 DPR 714, 722 (2003). Véase, además, Casanova v. P.R.-Amer. Ins. Co., supra.

[6] Casanova v. P.R.-Amer. Ins. Co., supra.

incumplido con el pago establecido en el contrato de financiamiento de la póliza. Esto motivó que la institución financiera solicitara a la aseguradora que cancelara la póliza de seguro y, a su vez, advirtió a la asegurada que debía realizar los pagos adeudados para que la póliza fuera reinstalada. La asegurada realizó varios pagos posteriores, pero sin poner al día lo adeudado, por lo que la póliza no fue reinstalada. Poco tiempo después, la asegurada sufrió un accidente de automóvil y la aseguradora denegó la cubierta de seguro por haber sido previamente cancelada a solicitud de la institución financiera.

Durante el pleito, la parte afectada en el accidente reclamó a la compañía aseguradora alegando que la cancelación de la póliza de la otra parte había sido inoficiosa, pues al momento del accidente la compañía aseguradora no había devuelto las primas no devengadas. Este Tribunal atendió el asunto y determinó que cuando un asegurado cede -por medio del contrato de financiamiento- el derecho a cancelar la póliza de seguro a la institución financiera, dicha cancelación se hace como si hubiera sido hecha por el propio asegurado. Por ello, la misma es efectiva inmediatamente se hace la solicitud, sin que sea un requisito previo la devolución de las primas no devengadas. Así, al momento de determinar si una institución financiera puede solicitar la cancelación de la póliza, lo determinante es el contenido del contrato de

financiamiento y si el asegurado ha cedido el derecho de cancelación de la póliza a la institución financiera.

No obstante, este Foro tuvo ante su consideración nuevamente el asunto sobre la cancelación de pólizas a solicitud de la institución financiera y sus consecuencias en S.L.G. Francis-Acevedo v. SIMED, supra. En dicha ocasión, un profesional de la salud había solicitado una póliza de seguro del tipo "claims made" para protegerse sobre reclamaciones en su contra por el periodo de tiempo comprendido del 26 de enero de 2001 al 26 de enero de 2002. Sin embargo, dicha póliza contenía ciertas condiciones particulares. Entre las mismas, se establecía un periodo de extensión automático de 60 días de cubierta posterior a la vigencia de la póliza para aquellas reclamaciones por acciones u omisiones del galeno siempre y cuando la razón de cancelación de la póliza no fuera la falta de pago a la aseguradora.

A los fines de poder costear la póliza, el médico solicitó el financiamiento de la póliza con una institución financiera y se obligó a realizar pagos mensuales a dicha institución. En una ocasión, el galeno incumplió con su pago con la institución financiera. Por ello, la institución solicitó la cancelación de la póliza a la compañía aseguradora según establecía el contrato de financiamiento. La cancelación de la póliza se hizo efectiva. A pesar de esto, el médico continuó haciendo

pagos a la institución financiera y solicitó la reinstalación de la póliza a la compañía aseguradora. No obstante, por no suplir la documentación según le fue requerida, la compañía aseguradora denegó su solicitud.

Así las cosas, durante el término de 60 días dispuesto en la póliza como extensión automática, el galeno notificó una reclamación en su contra y la aseguradora denegó su cubierta. Esto pues, la compañía alegó que la falta de pago por parte del médico a la institución financiera dejaba sin efecto la extensión automática de la cubierta.

En dicha ocasión determinamos que la extensión automática de la póliza estaba condicionada a la falta de pago a la compañía de seguros, no así a la institución financiera. La pretensión de la compañía aseguradora era que el contrato de financiamiento modificó la póliza para equiparar la falta de pago a la institución financiera a la falta de pago a la compañía de seguros. No obstante, establecimos que **para que un contrato de financiamiento pueda modificar una póliza de seguro, el mismo tiene que formar parte de la póliza de seguro.**

### III.

En el caso de autos la recurrida suscribió un contrato de seguro con la Cooperativa para asegurar un vehículo que le fue arrendado por Eurolease. Para poder sufragar el costo de la póliza de seguro, la recurrida -a

su vez- suscribió un contrato de venta al por menor a plazos con el Banco. Dicho contrato establece en su contenido que la recurrida cedió el derecho a que el Banco se subrogase en su posición a los fines de cancelar la póliza de seguro y declarar la deuda total vencida si incumplía con su obligación de realizar el pago mensual por más de 15 días de vencido.

En repetidas ocasiones la recurrida incumplió con el pago mensual según establecido en el contrato de financiamiento. Así las cosas, en enero de 2005 la recurrida puso al día su cuenta con el Banco. Sin embargo, tan pronto como el próximo mes, febrero de 2005, la recurrida incumplió nuevamente con su obligación de realizar el pago. Por ello, el Banco decidió ejercer su derecho de subrogación conforme al contrato otorgado con la recurrida y solicitó a la Cooperativa la cancelación de la póliza. No obstante, previo a cancelar la póliza se le notificó por escrito a la recurrida sobre la solicitud del Banco y se le informó que para evitar la cancelación tenía que pagar el balance adeudado. A pesar de lo anterior, la recurrida no realizó el pago, por lo que su póliza quedó cancelada el 5 de marzo de 2005.

El 6 de junio de 2005 la recurrida sufrió un accidente en el vehículo arrendado. Eurolease demandó a la recurrida reclamando la pérdida del vehículo y esta, a su vez, reclamó a la Cooperativa por ser la aseguradora. Por

su parte, la Cooperativa denegó cubierta por dicho accidente, pues la póliza había sido cancelada previamente.

Distinto a la determinación del foro de instancia, posteriormente confirmada por el Tribunal de Apelaciones, la cancelación de la póliza no se realizó como una a iniciativa de la compañía aseguradora por falta de pago, sino una a solicitud del asegurado a través de la entidad que ofreció el financiamiento. Esto pues, conforme el contrato de financiamiento, la recurrida le confirió el derecho de subrogación al Banco al momento de contratar el financiamiento, si incumplía con sus obligaciones de pago.

Contrario a la situación de hechos de <u>S.L.G. Francis-Acevedo v. SIMED</u>, supra, en el que se pretendía modificar los términos y condiciones de la póliza a raíz del incumplimiento de pago a la institución financiera, en nuestro caso no se **modificó de forma alguna la póliza de seguro**, sino que el Banco asumió la posición de la recurrida y ejerció su derecho de cancelación de la póliza. Tal solicitud se hizo bajo los mismos términos y condiciones que la póliza le confería a la recurrida. Es decir, el contrato de financiamiento no tuvo el efecto de modificar la póliza, sino que cedió los derechos del asegurado de la misma manera en que estos fueron establecidos en el contrato de seguro. Por ello, no era necesario que el contrato de financiamiento se hiciera

formar parte de la póliza, pues esta no modificaba de forma alguna sus términos y condiciones.

Entiéndase que en S.L.G. Francis-Acevedo v. SIMED, supra, este Tribunal determinó que para que un contrato de financiamiento pueda alterar o modificar los términos y condiciones de una póliza de seguro, se requiere que el contrato de financiamiento forme parte de la póliza. No habiendo modificación alguna en cuanto a los términos y condiciones, sino un acto de subrogación de parte, no se requiere tal acción.

Por los fundamentos que anteceden, se revoca la Sentencia emitida por el Tribunal de Apelaciones y se devuelve el presente caso al Tribunal de Primera Instancia para que resuelva conforme con lo aquí expuesto.

Se dictará Sentencia de conformidad.


                                    Erick V. Kolthoff Caraballo
                                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eurolease

Linda S. Miranda Ortiz, et al.

    Recurridos

       v.

                          CC-2013-855      Certiorari

Cooperativa de Seguros
Múltiples de Puerto Rico

    Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 29 de octubre de 2015.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se revoca la Sentencia emitida por el Tribunal de Apelaciones y se devuelve el presente caso al Tribunal de Primera Instancia para que resuelva conforme con lo aquí expuesto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Presidenta señora Fiol Matta, la Juez Asociada señora Rodríguez Rodríguez y la Jueza Asociada Oronoz Rodríguez concurren con el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo